18733

Lynne H. GRIMSLEY, Appellant, v. J. Carlisle GRIMSLEY, Respondent

(158 S. E. (2d) 197)

*Messrs. Jerome P. Askins, Jr.,* of Hemingway, and
*McEachin, Townsend & Zeigler,* of Florence, *for Appellant,*

*Messrs. Willcox, Hardee, Houck, Palmer & O'Farrell,* of Florence, *for Respondent,*

December 4, 1967.

LEWIS, Justice.

This appeal involves a review of the provision of an order of the lower court relative to visitation rights of a father with his child, after divorce and the award of custody to the mother.

The Civil Court of Florence granted to the plaintiff-wife a divorce from her husband, the defendant, on December 22, 1961, upon the ground of adultery. The divorce decree awarded custody of their only child, a girl, now seven years of age, to the mother with visitation rights to the father. A subsequent order of the court, issued on June 28, 1963, limited the father's visitation privileges with the child to one afternoon each week from 2:00 p. m. to 6:00 p. m., alternating between Saturday and Sunday afternoons.

Compliance with the visitation provisions of the foregoing orders has apparently been the source of a continuing controversy between the parties. These disagreements resulted in a further hearing on December 28, 1966, with respect to the father's visitation privileges with the child. The issues were before the court upon the petition of the father, which alleged that the mother had failed to permit him to visit with the child as previously ordered, and the return of the mother, which asked that the father's visitation rights be either eliminated or further limited for the best interests of the child. After such hearing, at which considerable testimony was taken, the trial judge issued an order on January 6, 1967, in which he held that the father's visitation rights

should be continued, but modified the prior order by permitting the child to visit with the father on each alternate Saturday from 9:00 a. m. to 6:00 p. m., instead of one afternoon each week. The matter is before us on appeal of the mother from the last mentioned order and involves solely a review of the action of the lower court in fixing visitation rights of the father with the child.

The trial judge fixed visitation rights after hearing the testimony of the parties and the witnesses and, in such cases, we have held that "the matter is one addressed to the Trial Court's broad discretion and that in the absence of a clear abuse of such, the order granting, denying or limiting visitation rights will not be disturbed." *Porter v. Porter*, 246 S. C. 332, 143 S. E. (2d) 619.

A detailed review of the testimony would serve no useful purpose. It appears that the father professes a desire to reestablish the marriage. He has rather relentlessly, and obnoxiously to the mother, pursued this desire, not only directly with her, but through intermediaries and the child. The mother is adamant in her refusal to remarry him. He has, since the divorce, become a minister of the Church of God of Prophecy, does not now believe in divorce, and believes that a divorced person who has dates or marries another commits a sin and is in danger of spiritual damnation.

The mother sought to show that the father has been persistently using the child as a pawn to accomplish his purpose of reconciliation and, in furtherance of such aim, has communicated to the child his beliefs concerning divorce to induce her to believe that the mother is committing a sin by continuing to refuse to live with him. She further charges that the pursuit of the matter by him in such manner and the continued attempt to instill into the child his beliefs concerning divorce has caused the child to become emotionally upset and will further endanger her well-being if his visitation privileges are continued. These charges are denied

by the father and he contends that the mother is at fault in the difficulties which have arisen over visitation.

In determining visitation rights, the welfare of the child is the paramount consideration. *Porter v. Porter, supra.* The child is the innocent victim of the broken home and at best has a most difficult time in adjusting to the separation of the parents. It is therefore the duty of the parents, irrespective of other considerations, to lend their aid in creating an atmosphere that will foster the best interests of the child. Neither parent has a right to use the child as a pawn or club in dealing with the other and, where such is done to the detriment of the child, it affords proper ground to deny or limit visitation privileges.

While we are not too favorably impressed with some of the actions of the father, we cannot say that the lower court abused its discretion in continuing his visitation privileges. We are satisfied, as was the lower court, that a recognition in the future by the parties of the mutual rights of each other and the welfare of the child will eliminate as far as possible problems concerning the child's emotional adjustment. However, a continued failure of the parties to reconcile themselves to the situation that exists and to attempt to live with the situation without further harrassment may necessitate the drastic action of denying visitation privileges to the offending parent. We are confident that the lower court in the exercise of its continuing jurisdiction in the matter will enter, when necessary, such future orders respecting custody and visitation as will assure that the child will not be subjected to a continuing tug-of-war between the parents.

Affirmed.

Moss, C. J., and BUSSEY, BRAILSFORD and LITTLEJOHN, JJ., concur.