574 S.E.2d 730

**SOUTH CAROLINA DEPARTMENT OF SOCIAL SERVICES, Petitioner,**

**v.**

**Scott WILSON and Sharon Zimmer, Defendants,**

**of whom Scott Wilson is Respondent.**

**In the interest of a minor under the age of 18.**

No. 25568.

Supreme Court of South Carolina.

Heard June 12, 2002.

Decided Dec. 16, 2002.

446

Richard B. Ness and Michael C. Tanner, of Early & Ness, of Bamberg, for petitioner.

H. Stanley Feldman, of Charleston, and Kelly M. Braithwaite, of Columbia, and for respondent.

Justice BURNETT:

The Court granted a writ of certiorari to review the decision of the Court of Appeals in *South Carolina Dep't of Social Services v. Wilson,* 342 S.C. 242, 536 S.E.2d 392 (Ct.App.2000). We affirm as modified.

### *FACTS*

Pursuant to South Carolina Code Ann. § 20–7–738 (Supp. 2001), Petitioner South Carolina Department of Social Services (DSS) brought this child abuse and/or neglect proceeding in the interest of a minor under the age of 18 against her divorced parents. DSS alleged the minor was, among other claims, sexually abused by her father Respondent Scott Wilson (Wilson) and sought 1) an intervention hearing by the family court, 2) inclusion of Wilson's name in the Central Registry of Child Abuse and Neglect pursuant to South Carolina Code Ann. § 20–7–650(K) (Supp.2001), 3) approval of a treatment plan, and 4) any other relief deemed necessary and proper.

At the beginning of the intervention hearing, counsel for DSS moved to allow the seventeen-year-old minor to testify outside the presence of her father. Counsel for DSS stated

the minor did not want to testify in her father's presence because the allegations involved sexual abuse. Over Wilson's objection, the family court granted DSS' motion.

While the minor testified in the courtroom, Wilson was sequestered in a conference room. Although he could hear his daughter, Wilson and the minor could not see each other. Wilson's attorney remained in the courtroom. Wilson consulted with his attorney during a two minute break after the minor's direct examination. Cross-examination followed, again outside Wilson's presence.

Ultimately, the family court issued an order finding "DSS has met their burden of proof for threat of harm for sexual abuse perpetrated by [Wilson]." It concluded Wilson "abused or neglected" the minor as defined in South Carolina Code Ann. § 20–7–490 (Supp.2001)[1] and ordered his name be entered in the Central Registry of Child Abuse and Neglect. Additionally, the family court ordered the minor's custody remain with her mother, noted Wilson had agreed to forego visitation, and ordered counseling for Wilson and his daughter.[2]

Wilson appealed. The Court of Appeals held "the family court's decision to allow [the minor] to testify outside [Wilson's] presence violated due process because it denied him the right of confrontation." *Id.* 342 S.C. at 244, 536 S.E.2d at 393. The Court granted DSS' petition for a writ of certiorari.

## *ISSUES*

I. Did the Court of Appeals err by determining Wilson has an interest which is protected by due process?

II. Did the Court of Appeals err by adopting the procedures set forth in *State v. Murrell,* 302 S.C. 77, 393 S.E.2d 919 (1990), for use in intervention proceedings?

---

1. The statute defines "abused or neglected child" as a child who has been harmed or is threatened with harm. S.C.Code Ann. § 20–7–490(2).

2. The minor was five years old when her parents divorced. She lived with Wilson since the divorce until four months before the family court hearing. By consent, permanent custody was awarded to the minor's mother before the intervention hearing.

III. Did the Court of Appeals fail to consider the effect of its decision on Family Court Rule 22 and South Carolina Code Ann. § 19–1–180 (Supp.2001)?

IV. Did the Court of Appeals err by holding the minor's testimony outside Wilson's presence was insufficient to comport with due process?

## ANALYSIS

### INTERVENTION PROCEEDINGS

The General Assembly has enacted a comprehensive scheme to administer child welfare services. S.C.Code Ann. § 20–7–480 *et seq.* (Supp.2001). The stated purpose of the intake provision is to, among other goals, "establish an effective system of services throughout the State to safeguard the well-being and development of endangered children and to preserve and stabilize family life, whenever appropriate" and "establish fair and equitable procedures, compatible with due process of law to intervene in family life with due regard to the safety and welfare of all family members." S.C.Code Ann. § 20–7–480(B)(2) and (4) (Supp.2001).

DSS has the statutory duty to investigate all reports of suspected child abuse and neglect. S.C.Code Ann. § 20–7–650. After investigation, DSS "may petition the family court for authority to intervene and provide protective services without removal of custody if the department determines by a preponderance of the evidence that the child is an abused or neglected child and that the child cannot be protected from harm without intervention." [3] S.C.Code Ann. § 20–7–738(A).

After the hearing, the family court may order intervention and protective services if it finds the allegations of the petition are supported by a preponderance of the evidence, including a finding that the child is an abused or neglected child as defined in Section 20–7–490 and the child cannot be protected from further harm without intervention. S.C.Code Ann. § 20–7–738(D). If the family court finds there is a preponderance of evidence the defendant physically or sexually abused or willfully or recklessly neglected the child, it must

---

3. Other options, including removal of the child from parental custody, are available. S.C.Code Ann. § 20–7–736.

order the person be entered in the Central Registry of Child Abuse and Neglect. S.C.Code Ann. § 20–7–650(K)(1).[4] The statutory proceeding is "a civil action aimed at protection of a child, not a criminal action geared toward punishing a defendant." *Beaufort County Dep't of Social Serv. v. Strahan*, 310 S.C. 553, 554, 426 S.E.2d 331, 332 (Ct.App.1992).

## DUE PROCESS

The Fourteenth Amendment to the United States Constitution provides, "nor shall any State deprive any person of life, liberty, or property, without due process of law ...". "[D]ue process is flexible and calls for such procedural protections as the particular situation demands." *Morrissey v. Brewer*, 408 U.S. 471, 481, 92 S.Ct. 2593, 2600, 33 L.Ed.2d 484, 494 (1972). The requirements in a particular case are dependent upon the importance of the interest involved and the circumstances under which the deprivation may occur. *South Carolina Dep't of Social Serv. v. Beeks*, 325 S.C. 243, 481 S.E.2d 703 (1997); *Mathews v. Eldridge*, 424 U.S. 319, 335, 96 S.Ct. 893, 903, 47 L.Ed.2d 18, 33 (1976) (in determining the process which is due, court will consider the private interest affected by the proceeding, the risk of error created by the chosen procedure, and the countervailing governmental interest supporting challenged procedure). The fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner. *South Carolina Dep't of Social Serv. v. Beeks, supra.*

"Where important decisions turn on questions of fact, due process often requires an opportunity to confront and cross-examine adverse witnesses." *Brown v. South Carolina State Bd. of Educ.*, 301 S.C. 326, 329, 391 S.E.2d 866, 867 (1990) *citing Goldberg v. Kelly*, 397 U.S. 254, 90 S.Ct. 1011, 25

---

4. A person's name remains on the registry for seven years. Information contained in the Central Registry of Child Abuse and Neglect is confidential. However, a lengthy list of exceptions authorizes certain persons access to the information. S.C.Code Ann. § 20–7–690(A). For example, law enforcement agencies and solicitors investigating suspected child abuse may obtain information contained on the registry. S.C.Code Ann. § 20–7–690(B)(4) and (19). In addition, the "perpetrator" may be disclosed "when screening of an individual's background is required by statute or regulation for employment, licensing, or any other purposes ...". S.C.Code Ann. § 20–7–690(J).

L.E.2d 287 (1970); *see South Carolina Dep't of Social Serv. v. Holden,* 319 S.C. 72, 459 S.E.2d 846 (1995) (right to confrontation applies in civil context). Confrontation includes the right to be physically present during the presentation of testimony. *See State v. Shuler,* 344 S.C. 604, 545 S.E.2d 805 (2001). Due process is not violated where a party is not given the opportunity to confront witnesses so long as there has been a meaningful opportunity to be heard. *South Carolina Dep't of Social Serv. v. Holden, supra.*

## I.

■ DSS claims the Court of Appeals erred by determining Wilson had an interest which was protected by due process because the intervention proceeding did not affect his life, liberty, or property. We disagree.

The Fourteenth Amendment guarantees Wilson a fundamental right to freedom from State interference with his relationship with his daughter. *See Santosky v. Kramer,* 455 U.S. 745, 753, 102 S.Ct. 1388, 1394, 71 L.Ed.2d 599, 606 (1982) ("[F]reedom of personal choice in matters of family life is a fundamental liberty interest protected by the Fourteenth Amendment."); *Greenville County Dep't of Social Serv. v. Bowes,* 313 S.C. 188, 194, 437 S.E.2d 107, 111 (1993), *quoting Santosky v. Kramer, supra* 455 U.S. at 753, 102 S.Ct. at 1394–95, 71 L.Ed.2d at 606 ("The fundamental liberty interest of natural parents in the care, custody, and management of their child does not evaporate simply because they have not been model parents...."). Although DSS' action neither sought to terminate Wilson's parental rights nor remove the minor from Wilson's home, both situations which clearly interfere with a fundamental liberty interest and invoke due process protections,[5] by initiating this action DSS nonetheless "intervened" in Wilson's relationship with his daughter. Accordingly, the Court of Appeals did not err in finding Wilson has a funda-

---

5. *Stanley v. Illinois,* 405 U.S. 645, 92 S.Ct. 1208, 31 L.Ed.2d 551 (1972) (because parent has constitutionally protected interest in the relationship with his or her child, state must accord parent a hearing before terminating the relationship); *South Carolina Dept. of Social Serv. v. Beeks, supra,* (parent's interest in child removal proceeding was "extraordinarily significant" and, therefore, accorded due process protections).

mental liberty interest in his familial relationship which entitles him to some level of due process in an intervention action.

## II.

DSS asserts the Court of Appeals erred by adopting the procedures set forth in *State v. Murrell, supra,* to determine whether the child witness may testify outside the presence of her parent/defendant.

In *State v. Murrell, supra,* the Court established the circumstances under which and procedures by which a child witness may testify outside the presence of the defendant in a criminal trial via videotaped testimony:

First, the trial judge must make a case-specific determination of the need for videotaped testimony. In making this determination, the trial court should consider the testimony of an expert witness, parents or other relatives, other concerned and relevant parties, and the child. Second, the court should place the child in as close to a courtroom setting as possible. Third, the defendant should be able to see and hear the child, should have counsel present both in the courtroom and with him, and communication should be available between counsel and appellant.

*Id.* 302 S.C. at 80–81, 393 S.E.2d at 921.

More recently, our Court stated:

The trial court must also find that the child witness would be traumatized, not by the courtroom generally, but by the presence of the defendant.... Denial of face-to-face confrontation is not needed to further state interest in protecting the child witness from trauma unless it is the presence of the defendant that causes the trauma.

*State v. Bray,* 342 S.C. 23, 30, 535 S.E.2d 636, 640 (2000) *quoting Maryland v. Craig,* 497 U.S. 836, 856–7, 110 S.Ct. 3157, 3169–70, 111 L.Ed.2d 666, 685 (1990).

In *State v. Bray, id.,* the Court indicated its unwillingness to adopt any categorical prerequisites in order for a child witness to testify outside the defendant's presence. The Court nonetheless emphasized the trial judge must make case-specific reasons for use of a procedure which excludes the defendant from being present during the child victim's testimony.

 Like criminal matters, an important liberty interest is also at issue in an intervention proceeding. Accordingly, in an intervention proceeding, the child witness' testimony should be given in the presence of the parent/defendant. However, the Court recognizes that in some circumstances it is necessary to protect sensitive witnesses, especially minors, from the trauma of testifying. *See State v. Cooper,* 291 S.C. 351, 353 S.E.2d 451 (1987) (while it is preferable for child accuser to testify in criminal trial, face-to-face requirement of confrontation may be served by appearance before counsel for cross-examination outside defendant's presence).[6]

 Consequently, we conclude that while the procedures established in *State v. Murrell, supra,* are applicable in criminal matters, not intervention hearings, they do provide useful guidance. Accordingly, we adopt a procedure by which the family court may permit a child witness to testify outside the presence of the parent/defendant. The family court must first determine the child would be traumatized by testifying in the presence of her parent/defendant and, therefore, it is necessary for the child to testify outside the presence of the parent/defendant. In determining whether need for this accommodation exists, the family court may consider the child's age, mentality, and any other pertinent information. In making its decision, the family court should consider the testimony of the child and/or other relevant witnesses. We emphasize the family court must make case-specific findings of need for the special accommodation and it must place those particularized findings on the record.

 Second, if the family court determines the child witness may testify outside the parent/defendant's presence, the testimony should be given in an environment which indicates the seriousness of the matter. Arrangements should be made for the parent/defendant to hear the child while she testifies. The parent/defendant should have reasonable opportunities to confer with counsel during the child's testimony and the

---

6. As a general principle, where matters affecting a child's welfare are at issue, the best interest of the child is of paramount concern. *See Cook v. Cobb,* 271 S.C. 136, 245 S.E.2d 612 (1978) (custody); *Grimsley v. Grimsley,* 250 S.C. 389, 158 S.E.2d 197 (1967) (visitation); *McCutcheon v. Charleston County Dep't of Social Serv.,* 302 S.C. 338, 396 S.E.2d 115 (Ct.App.1990) (adoption)

parent/defendant's counsel should have the opportunity to cross-examine the child witness.

We conclude this simple balancing procedure adequately protects the child witness from unnecessary trauma while fairly protecting the parent/defendant's constitutional right to due process, including the right to confrontation.

## III.

■ DSS asserts that requiring the family court to determine whether a child witness may be permitted to testify outside the presence of the parent/defendant will interfere with Family Court Rule 22 and South Carolina Code Ann. § 19-1-180 (Supp.2001). We disagree.

Rule 22, SCRFC, provides:

In all matters relating to children, the family court judge shall have the right, within his discretion, to talk with children, individually or together, in private conference. Upon timely request, the court, in its discretion, may permit a guardian ad litem for a child who is being examined, and/or the attorneys representing the parents, if any, to be present during the interview.

Rule 22, SCRFC, provides the family court judge with discretion to speak with the child in private conference. The parent/defendant's due process right to be present when a child *testifies* does not interfere with the application of Rule 22, SCRFC.

■ South Carolina Code Ann. § 19-1-180 (Supp.2001) provides for the admission of out-of-court statements made by a child who is less than twelve years old or who functions cognitively, adaptively, or developmentally under the age of twelve at the time of the family court abuse and/or neglect proceeding.[7] Pursuant to the statute,

(B) An out-of-court statement [attributed to the child] may be admitted if . . .

1) the child testifies at the proceeding or testifies by means of video deposition or closed-circuit television, and

---

7. For various reasons, we question whether Section 19-1-180 applies to the scenario in this action. We nevertheless address the issue due to its importance in family court proceedings.

at the time of the testimony the child is subject to cross-examination about the statement; or

(2) (a) the child is found by the court to be unavailable to testify on any of these grounds:

(i) the child's death;

(ii) the child's physical or mental disability;

(iii) the existence of a privilege involving the child;

(iv) the child's incompetency, including the child's inability to communicate about the offense because of fear;

(v) substantial likelihood that the child would suffer severe emotional trauma from testifying at the proceeding or by means of videotaped deposition or closed-circuit television [8]; and

(b) the child's out-of-court statement is shown to possess particularized guarantees of trustworthiness.

Section 19–1–180(B)(1) does not authorize the exclusion of the parent/defendant at the video deposition, closed circuit television taping, or the proceeding at which the child testifies. In fact, because the statute specifically provides for cross-examination at the time the child testifies, it contemplates the presence of the parent/defendant. *See Dep't of Social Serv. v. Wheaton,* 323 S.C. 299, 474 S.E.2d 156 (Ct.App.1995) (Section 19–1–180 provides hearsay statement is admissible if child testifies and submits to cross-examination). Should DSS believe there is a compelling need for the child to testify outside the presence of her parent/defendant, it should file a motion requesting the family court's permission to obtain the child's testimony outside the parent/defendant's presence.

Furthermore, Section 19–1–180(B)(2) is not affected by our holding in this matter. Section 19–1–180(B)(2) allows the family court to admit a child's out-of-court statement after deeming the child "unavailable" to testify for one of five statutory grounds and determining the statement possesses particularized guarantees of trustworthiness. If the family

---

**8.** *See Richland County Dept. of Social Serv. v. Earles,* 330 S.C. 24, 496 S.E.2d 864 (1998) (in case applying Section 19–1–180(B)(2)(a)(v), "severe trauma" was met through child's angry and aggressive behavior and extremely severe emotional reaction to discussion of the abuse).

court makes these determinations, the child does not testify. Our decision in this case applies when a child testifies.

## IV.

 DSS contends, even though the minor did not testify in the presence of her father, Wilson's due process rights were nonetheless protected by his ability to hear the minor's testimony, his counsel's presence during her testimony, his right to cross-examination, and Wilson's ability to confer with counsel before cross-examination. We disagree.

As discussed above, if the child testifies at an intervention proceeding, the due process right to confrontation requires the child testify in the presence of her parent/defendant unless special circumstances are established. Wilson's ability to hear the minor's testimony, discuss her testimony with counsel, and cross-examine her were insufficient to satisfy due process without the determination the minor would be traumatized by testifying in her father's presence. As conceded by DSS at oral argument, the minor was the key witness against Wilson and she may have been less credible if she had testified in his presence. Because Wilson did not have the opportunity to be heard in a meaningful manner, his due process right was violated. *Cf. South Carolina Dep't of Social Serv. v. Holden, supra* (where father obtained six month continuance to depose mother but failed to do so, his due process right was not violated through admission of mother's affidavit rather than live testimony in child enforcement proceeding).

The Court of Appeals' opinion is **AFFIRMED AS MODI-FIED.**

MOORE, WALLER, PLEICONES, JJ., concur.

TOAL, C.J., dissenting in a separate opinion.

Chief Justice TOAL:

I respectfully dissent. In my opinion, Wilson's objection to DSS' motion did not preserve the argument he raises on appeal concerning application of the procedures established in *State v. Murrell,* 302 S.C. 77, 393 S.E.2d 919 (1990), to intervention proceedings in family court. Regardless, I believe the examination of Wilson's daughter comported with

due process, as she remained in the courtroom setting, Wilson was able to hear the direct and cross-examination of his daughter by live video monitor, and was able to confer with his counsel before cross-examination. *See Murrell*, 302 S.C. at 82, 393 S.E.2d at 922.

As discussed by the majority, in *State v. Murrell*, this Court established procedures by which a child witness could testify outside the presence of the *defendant* in a *criminal* trial. Until the Court of Appeals' decision in this case, these procedures have been limited to *criminal* trials. Although I have no problem with extending the use of these procedures to family court proceedings prospectively, I object to the mandatory, retroactive application of the procedure to this case, in which the family court's failure to make an individualized determination of need was, at most, harmless error.

Wilson has made no showing that he was prejudiced by having his daughter testify outside of his presence, or that DSS could not show the requisite need for his daughter to testify outside of his presence. The family court ensured Wilson's due process rights were protected: Wilson's daughter testified in the courtroom, Wilson was able to hear his daughter testify on direct and cross, and was able to confer with his attorney prior to cross-examination of his daughter. Therefore, I believe his due process rights were not harmed by the court's failure to make an individualized determination of need in this case, and would **REVERSE** the decision of the Court of Appeals on that basis.