582 S.E.2d 413

**In re Anant A. VORA, M.D.**

**Anant A. VORA, M.D., Respondent,**

v.

**LEXINGTON MEDICAL CENTER, Appellant.**

No. 25664.

Supreme Court of South Carolina.

Heard April 3, 2003.

Decided June 12, 2003.

592

Andrew F. Lindemann, of Davidson, Morrison and Lindemann, P.A., and Ernest J. Nauful, Jr., of Columbia, for Respondent.

Deborah R.J. Shupe, of Columbia, for Appellant.

Justice WALLER:

Lexington County Medical Center (Hospital) appeals an order of the circuit court requiring it to reinstate the privileges of Anant A. Vora, M.D., to practice pediatric medicine at its facility. We reverse.

## FACTS

In September 1997, Hospital's Chief of staff, Dr. Givens, advised Dr. Vora that its Medical Executive Committee (MEC) had received a recommendation from the Quality Assessment Committee (QAC) to initiate corrective action in regard to Dr. Vora's clinical privileges. An *ad hoc* committee was appointed to investigate Dr. Vora's clinical practice and report to the MEC. In January 1998, the *ad hoc* committee found, after reviewing a number of his cases, that Dr. Vora had 1) a pattern of inappropriate hospitalization, stays which could have either been shortened or which could have utilized outpatient treatment, 2) use of set protocols inappropriately in cases of like diseases, regardless of the degree of impairment, 3) inappropriate use of antibiotics and outdated modalities, 4) a pattern of overstating the severity of illness, and 5) a missed diagnosis which resulted in unnecessary hospitalization and surgical intervention. Based on these findings, the ad hoc Committee recommended Dr. Vora's clinical privileges be terminated indefinitely, and corrective action be taken.

The matter was reviewed by the MEC, which concluded there had been "a continual pattern of clinical deficiencies

since 1988." Pursuant to Hospital's Medical Staff By–Laws, Dr. Vora requested and was given a hearing by the Fair Hearing Committee, which took place over six separate days with witnesses and evidence. The Hearing Committee found as follows:

1. Practitioner utilized set protocols inappropriately in the management of all cases involving like diseases or illnesses, regardless of the degree of severity of the individual patient's condition or the patient's response to early therapy.

2. Practitioner frequently demonstrated the inappropriate use of antibiotics and outdated treatment modalities.

3. Practitioner demonstrated a pattern of overstating the severity of illness not confirmed by laboratory tests or other objective data in the medical record.

4. In case number 13, the Practitioner demonstrated a departure from generally accepted standards of care which created the potential for significant risk to the patient.

5. The Practitioner has demonstrated unprofessional interaction with colleagues and staff on a recurring basis.[1]

Based on these findings, the Fair Hearing Committee recommended Dr. Vora's staff privileges be temporarily suspended until completion of certain corrective measures. The MEC upheld the findings of the Fair Hearing Committee, and imposed a temporary suspension while corrective measures were undertaken, to be accomplished within 18 months. Dr. Vora sought an appellate review of the MEC's findings, which was conducted by a committee (the Appellate Review Board) of the Board of Directors of Lexington Medical Center on April 19, 1999. On May 27, 1999, the Appellate Review Committee issued its report, recommending the action taken by the MEC be affirmed. The Board of Directors thereafter issued its final decision unanimously adopting the Report of the Appellate Committee. Dr. Vora appealed the final decision of the Board to the circuit court, which reversed the Board's decision, finding certain procedures employed by Hos-

---

1. The appellate review committee found no evidence of unprofessional interaction on a **recurring** basis.

 

pital's various panels, boards and committees deprived Dr. Vora of due process; the court ordered Dr. Vora's privileges be reinstated. Hospital appeals.

## ISSUES

1) Did the circuit court err in ruling Dr. Vora's due process rights had been violated?

1) Should the circuit court have reversed on the ground that the disciplinary action taken by the Hospital was not supported by the evidence?

## 1. DUE PROCESS

A physician's interest in being reappointed to a hospital staff is a property interest which may not be denied without compliance with the procedural and substantive due process requirements of the Fourteenth Amendment. *Huell-mantel v. Greenville Hosp. System,* 303 S.C. 549, 402 S.E.2d 489 (Ct.App.1991), *citing In Re: Zaman,* 285 S.C. 345, 329 S.E.2d 436 (1985). Procedural due process requirements are not technical; no particular form of procedure is necessary. *Id.* The United States Supreme Court has held, however, that at a minimum certain elements must be present. These include (1) adequate notice; (2) adequate opportunity for a hearing; (3) the right to introduce evidence; and (4) the right to confront and cross-examine witnesses. We find these criteria were amply met in this case.

The circuit court found a violation of Dr. Vora's due process rights for several reasons. It found a) Hospital had imposed an unreasonable burden of proof on Dr. Vora, b) Dr. Vora was denied the right to *voir dire* members of the Fair Hearing Panel, and c) he was denied the right to meaningfully cross-examine one of the Hospital's witnesses. We hold these deprivations do not rise to the level of a due process violation.[2]

---

**2.** Although the circuit court also enumerated several "procedural irregularities" in the background section of its order, those irregularities did not form the basis of its finding of a due process violation. Accordingly, we do not address them here.

### a. Burden of Proof

■ The burden of proof set forth in Hospital's Fair Hearing Plan states:

> When a hearing relates to Section 2.1(a), (e), (h) or (i),[3] the practitioner who requested the hearing shall have the burden of proving, by clear and convincing evidence, that the adverse recommendation or action lacks any factual basis, or that such basis or the conclusions therefrom are either arbitrary, unreasonable, or capricious. Otherwise, **the body whose adverse recommendation or action occasioned the hearing shall[4] thereafter be responsible for supporting his challenge to the adverse recommendation for action by clear and convincing evidence** that such basis or conclusions drawn therefrom are either arbitrary, unreasonable, or capricious.

(emphasis supplied). The circuit court found the burden of proof set forth in the Fair Hearing Plan "plainly ambiguous, unintelligible, arbitrary, capricious, and therefore violated due process requirements of notice and a reasonable opportunity to be heard." It then found it "manifestly clear that [Hospital] has imposed an unreasonable burden of proof on [Dr. Vora], such that the decision of the Board of Directors must be reversed." Contrary to the circuit court's finding, the evidence simply does not demonstrate that the Hospital placed an unreasonable burden of proof on Dr. Vora.

■ The Appellate Review Committee, in reviewing the MEC's imposition of sanctions against Vora, stated that "In all fairness to the Practitioner, this committee has **reviewed the record before the hearing committee by imposing the same standard of proof, i.e., by clear and convincing evidence, upon the MEC,** even though this is not strictly required by . . . the Fair Hearing Plan." (Emphasis supplied). Given the complete and independent review by the Appellate Review Committee, we find any alleged inappropriate burden at earlier stages was harmless. *Cf. Ross v. Medical University of*

---

3. These sections do not apply to this case.

4. The 1998 version of the Fair Hearing Plan inserted the following 14 words after shall: "have the initial obligation to present evidence in support therefore, but the practitioner shall . . ."

*South Carolina,* 328 S.C. 51, 492 S.E.2d 62 (1997) (procedural errors in review process of terminated faculty rendered harmless in light of subsequent independent review). *See also Schaper v. City of Huntsville,* 813 F.2d 709 (5th Cir.1987) (alleged conspiracy at pretermination procedure did not violate due process rights where employee had right to appeal termination); *Davis v. Mann,* 721 F.Supp. 796 (S.D.Miss.1988) (where there is an adequate appeal process, bias on part of initial decision maker is not denial of procedural due process). The circuit court erred in finding the burden imposed upon Dr. Vora resulted in a due process violation.[5]

### b. *Voir Dire* of Panel Members

The circuit court also held Dr. Vora was denied due process by the trial court's refusal to ask members of the Fair Hearing Panel whether they had been represented by the prosecuting attorney. We do not find this deprived Dr. Vora of due process.

Dr. Vora was advised in advance as to the names of the physicians who had been appointed to the Hearing Committee. Dr. Vora objected and had one panel member, Dr. Mubarek, removed from the panel.[6]

At the hearing, Dr. Vora sought to inquire as to whether any panel member had any relationship with Hospital's attorney, Attorney Nauful. Although the Hearing Officer would not allow Dr. Vora's counsel to pose this specific question, the officer did ask at the outset whether "any member of the five member panel know[s] of any reason why they would be

---

5. Although we find no due process violation in the instant case, for the benefit of bench and bar, we address the issue of the appropriate burden of proof in medical privilege cases. In *Anonymous v. State Board of Medical Examiners,* 329 S.C. 371, 496 S.E.2d 17 (1998), we held the correct standard of proof in medical disciplinary proceedings under the Administrative Procedures Act was not "clear and convincing" but, rather, "a preponderance of the evidence." Although this is not an APA case, we nonetheless find this standard appropriate in suspension or revocation of medical privileges cases. As the ARC applied the higher standard upon the MEC in this case, there is no need for a remand for application of the lesser standard.

6. The Hospital's Fair Hearing Plan provides that direct competition with the charged party will serve to disqualify committee members.

biased or prejudiced in any way so as to be unable to render a fair hearing to the physician in this matter?" No member of the panel responded.

 The parties liken the situation to *voir dire* of a jury panel. As noted by the Court in *Thompson v. O'Rourke,* 288 S.C. 13, 14, 339 S.E.2d 505, 506 (1986), a party seeking a new trial based upon the disqualification of a juror must show: (1) the fact of disqualification; (2) the grounds for disqualification were unknown prior to verdict; and (3) the moving party was not negligent in failing to learn of the disqualification before verdict. We recognized in *Thompson,* that "there is no absolute rule of disqualification based on a juror's relationship to an attorney in the case." 288 S.C. at 15, 339 S.E.2d at 506.

Dr. Vora has presented no evidence that any of the panel members had **any** relationship with Hospital's attorney, let alone that any possible relationship would have disqualified them. There is simply no evidence in the record any of the panel members had any relationship with Hospital's attorney, or that, even if they did, they were somehow prejudiced against Dr. Vora. We find the trial court erred in finding a due process violation in the hearing officer's refusal to further query the panel members. *See Green v. Maynard,* 349 S.C. 535, 564 S.E.2d 83 (2002)(recognizing that this Court has repeatedly acknowledged that peremptory strikes implicate no constitutional right).

Moreover, under this Court's opinion in *Ross, supra,* even if there were a due process problem with the panel at the Fair Hearing Panel level, any error was harmless in light of the subsequent independent review by the Appellate Review Committee and the Board of Directors, the composition of which has not been challenged by Dr. Vora.

### c. Denial of Cross–Examination

 At the circuit court hearing, Dr. Vora asserted he was denied the right to effective cross-examination of a witness, Nurse Melinda Cassell, at her deposition. We disagree. Contrary to the trial court's ruling, we do not believe the fairness of Dr. Vora's hearings was undermined by the examination of Nurse Cassell.

Case # 13 involved a two-month old infant brought to the emergency room. Nurses felt the infant needed to be transferred to a pediatric intensive care unit, which was not available at Lexington Medical Center;[7] Dr. Vora did not come to the hospital to see the infant for almost 12 hours after being advised of the baby's condition and abnormal lab tests. When nurses advised the Chief of Pediatrics, Dr. Reynolds, of their concerns, Dr. Reynolds ordered Dr. Vora relieved from the patient's care. Dr. Vora continued ordering lab work for the infant, delaying the infant's transfer to the pediatric ICU at Palmetto Richland Hospital.

During Nurse Cassell's deposition on June 19, 1998, counsel for Dr. Vora, Attorney Henshaw, questioned her as to whether or not she had gone back and reviewed the medical records of the incident, to which she replied affirmatively. He then asked her if she had written a note to herself after the incident, to which she responded, "No." Henshaw then asked whether **at any time** after the incident she had written a note, to which she responded that she had, but did not know where it had gone. Thereafter, Cassell refused to disclose the substance of the notes she had written after reviewing the record or where they had gone. Hospital's attorney, Nauful, stated he wanted to put it on the record that Nurse Cassell "reviewed the chart, **made notes in preparation for two meetings with me.** She is not using them presently to refresh her recollection; she's not using them for any other purpose. I don't believe you're entitled to them, and I'm not going to let you ask her any more questions about it." (Emphasis supplied). Attorney Nauful then instructed Cassell not to answer any questions about the matter. However, Nurse Cassell did ultimately reply that she had not written any more notes other than the notes she was referring to in regard to her meeting with Mr. Nauful.

Subsequent to the above exchange, the record reflects that there was a recess in order for the witness to take a phone

---

7. Nurse Cassell was the nursing supervisor on duty when case # 13 arose. She testified at her deposition she had gotten a phone call from the nurse on duty, Peggy Craven, that the infant was "sick, lethargic, difficult to arouse and that it was in the best interest of the child to be transferred to Richland." Nurse Cassell went to see the infant and concurred with Nurse Craven.

call. Thereafter, it was revealed that Cassell had consulted with her personal attorney during the recess. Dr. Vora asserts that Nurse Cassell's refusal to testify concerning the substance of the notes made in preparation for her meeting with attorney Nauful, and her consultation with her attorney during the recess, deprived him of due process. We disagree.

We recently recognized,

Where important decisions turn on questions of fact, due process often requires an opportunity to confront and cross-examine adverse witnesses. *Brown v. South Carolina State Bd. of Educ.*, 301 S.C. 326, 329, 391 S.E.2d 866, 867 (1990) *citing Goldberg v. Kelly*, 397 U.S. 254, 90 S.Ct. 1011, 25 L.E.2d 287 (1970); *see South Carolina Dep't of Social Serv. v. Holden*, 319 S.C. 72, 459 S.E.2d 846 (1995) (right to confrontation applies in civil context). Confrontation includes the right to be physically present during the presentation of testimony. *See State v. Shuler*, 344 S.C. 604, 545 S.E.2d 805 (2001). **Due process is not violated where a party is not given the opportunity to confront witnesses so long as there has been a meaningful opportunity to be heard.**

*South Carolina Dep't of Social Services v. Wilson*, 352 S.C. 445, 452, 574 S.E.2d 730, 734 (2002) (emphasis supplied).

Here, Dr. Vora was allowed to confront and cross examine Cassell and was given a meaningful opportunity to be heard. The fact that he was unable to ascertain the substance of the notes she made in preparation for her consultation with Attorney Nauful, or the nature of her conversation with her attorney,[8] is simply not such a deprivation as to amount to a due process violation.

## 2. EVIDENCE IN THE RECORD

As an additional sustaining ground, Dr. Vora asserts that the Hospital's suspension of his privileges was not supported by the evidence such that this Court should therefore

---

8. These matters would, in any event, be protected by the attorney/client privilege. *See State v. Love*, 275 S.C. 55, 271 S.E.2d 110 (1980) (attorney-client privilege protects against disclosure of confidential communications by client to attorney).

affirm the circuit court's order under *I57DOn v. Town of Mt. Pleasant*, 338 S.C. 406, 526 S.E.2d 716 (2000)(court can affirm for any reason appearing in the record). We disagree.

Hospital presented the testimony of an independent expert, Dr. Derrick, as to the deviations from the standard of care in each of the cases. Given this evidence supporting Hospital's decision, we simply cannot say that it's decision to impose corrective actions and clinical suspension of his privileges were arbitrary and unreasonable. *Huellmantel, supra,* (Substantive due process requires only that a public hospital not exclude a physician from practice therein by rules or acts which are unreasonable, arbitrary, capricious or discriminatory). Contrary to Dr. Vora's assertions, we find evidence supporting Hospital's decision.

## CONCLUSION

After a thorough review of the record, we are convinced that Dr. Vora was not deprived of due process. Dr. Vora's conduct was first assessed by a Quality Assurance Committee, which referred the matter to an Ad Hoc Committee appointed by Hospital's Chief of Staff. After the Ad Hoc Committee found deviations from the standard of care, the matter was reviewed by the Medical Executive Committee which concurred in the recommended corrective actions. Dr. Vora was then afforded a Fair Hearing, at which, over six occasions, he was allowed to present testimony and examine witnesses. The Fair Hearing Committee found numerous problems and recommended corrective action, and these findings were reviewed and upheld by the Medical Executive Committee. Thereafter, Dr. Vora was afforded a hearing before the Appellate Review Committee, after which that committee upheld the action taken by the MEC. The Appellate Review Committee's action was reviewed by Hospital's Board of Directors, which adopted the findings therein.

Notwithstanding the numerous "procedural irregularities" asserted by Dr. Vora, we find he was accorded all the process to which he was entitled, and the Hospital's actions were not arbitrary or capricious. *Huellmantel v. Greenville Hosp. System, supra* (court will not review hospital's administrative decision if physician has been granted procedural due process

and hospital has not acted in an arbitrary or capricious manner).

The circuit court's order is reversed, and the Hospital's decision is reinstated.

**REVERSED.**

TOAL, C.J., MOORE, BURNETT, JJ., and Acting Justice EDWARD W. MILLER, concur.