**THIS OPINION HAS NO PRECEDENTIAL VALUE. IT SHOULD NOT BE CITED OR RELIED ON AS PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 268(d)(2), SCACR.**

**THE STATE OF SOUTH CAROLINA**
**In The Court of Appeals**

South Carolina Department of Social Services, Respondent,

v.

Salisha Hemphill, Quanterio Williams, Jonathan Tillman, Desmond Skinner, and Martavious Ruff, Defendants,

Of whom Salisha Hemphill is the Appellant.

In the interest of minors under the age of eighteen.

Appellate Case No. 2015-000100

_____

Appeal From York County
Henry T. Woods, Family Court Judge

_____

Unpublished Opinion No. 2016-UP-413
Heard March 16, 2016 – Filed September 28, 2016

_____

**AFFIRMED**

_____

Melinda Inman Butler, of The Butler Law Firm, of Union, for Appellant.

David E. Simpson, of the South Carolina Department of Social Services, of Rock Hill, for Respondent.

Laura Kaiser Anderson, of the Counsel of Children's Rights, of Charlotte, for Guardian ad Litem.

---

**PER CURIAM:**  Appellant Salisha Hemphill (Mother) appeals the family court's finding that she physically neglected her six minor children, arguing poverty alone is not sufficient to satisfy the definition of child abuse or neglect pursuant to section 63-7-20(4) of the South Carolina Code (2010).  Mother additionally argues the family court erred in refusing to allow her to cross-examine the children and in finding the South Carolina Department of Social Services (DSS) made reasonable efforts to prevent or eliminate the need to remove the children from Mother's home.  We affirm pursuant to Rule 220(b), SCACR, and the following authorities:

1.  While we agree that poverty alone is not sufficient to satisfy the definition of child abuse or neglect, we hold DSS presented significant evidence to support the family court's decision that the children were at substantial risk of physical injury as set forth in section 63-7-20 of the South Carolina Code (2010).  Mother's failure to provide the children with adequate food, clothing, and shelter for a minimum period of nine days was neglect, and we find this placed the children at a substantial risk of physical injury.  *See* S.C. Code Ann. § 63-7-20(4) (2010) (defining "[c]hild abuse or neglect" or "harm" as occurring "when the parent . . . inflicts or allows to be inflicted upon the child physical or mental injury or engages in acts or omissions which present a substantial risk of physical or mental injury to the child[;] . . . [or] fails to supply the child with adequate food, clothing, shelter, or education . . . and the failure to do so has caused or presents a substantial risk of causing physical or mental injury.").

2.  As to Mother's argument regarding the family court's refusal to allow her to cross-examine the children after she requested to do so, we find the family court erred in not allowing Mother's attorney to cross-examine the children pursuant to *S.C. Dep't of Soc. Servs. v. Wilson*, 352 S.C. 445, 574 S.E.2d 730 (2002).  In *Wilson*, our supreme court held that a parent-defendant in a family court intervention proceeding has a constitutional right to due process, particularly the right to confront a child witness.  352 S.C. at 453–56, 574 S.E.2d at 730.  In the instant case, it appears that the family court relied upon Rule 22, SCRFC, to "let the children testify" in an "in camera interview," allowing only the guardian ad litem (GAL), the GAL's attorney, DSS's attorney, and Mother's attorney to be present in the courtroom.  While Rule 22, SCRFC, provides that "[i]n all matters relating to children, the family court judge shall have the right, within his discretion, to talk with the children, individually or together, in private

conference," *Wilson* makes plain that a "parent/defendant's due process right to be present when a child *testifies* does not interfere with the application of Rule 22, SCRFC." *Wilson*, 352 S.C. at 456, 574 S.E.2d at 736. Although the family court's failure to permit cross-examination was error, we find this error was harmless because the children's testimony that they lived with Mother at the Walnut Street home (and not on Spruce Street) was merely cumulative to the testimony of other witnesses who testified as to the family's place of residence and living conditions.[1] *See Delaware v. Van Arsdall,* 475 U.S. 673, 680 (1986) (whether Confrontation Clause error is harmless in a particular case depends upon a host of factors "including the importance of the witness' testimony, whether the testimony was cumulative*,* the presence or absence of evidence corroborating or contradicting testimony on material points, the extent of cross-examination otherwise permitted, and the overall strength of the prosecution's case"); *State v. Gracely*, 399 S.C. 363, 375, 731 S.E.2d 880, 886 (2012) (recognizing that a Confrontation Clause violation "is not per se reversible but is subject to harmless error analysis"); *S.C. Dep't of Soc. Servs. v. Smith*, 343 S.C. 129, 140, 538 S.E.2d 285, 290–91 (Ct. App. 2000) (applying harmless error analysis to cumulative hearsay testimony in termination of parental rights case).

3. We find DSS made reasonable efforts to prevent or eliminate the need for removal of the children from Mother's home. *See* S.C. Code Ann. § 63-7-640 (2010) ("[DSS] shall conduct within twenty-four hours after the child is taken into

---

[1] Latasha Bethea, a counselor with Aveya Health Services, testified that Mother admitted the family lived at the Walnut Street home and that Mother took the children to her aunt's home on Spruce Street to eat and bathe. Officer Jamey Faulkenberry, the patrol officer with the City of Rock Hill Police Department who responded to the Walnut Street call, determined that Mother and the children were living at the Walnut Street home and testified as to his concern "for the well-being of the children being in a residence with no power or water." He observed that "there was very[,] very little food in the house at the time," although he did find empty milk or juice jugs in the kitchen as well as a food box and bread items on the kitchen table. Officer Faulkenberry further testified that he saw recently lit candles in bedrooms and melted wax present throughout the house. Finally, Ashley Jones of York County DSS testified that although Mother initially claimed to live on Spruce Street with her aunt, she subsequently admitted that the family lived in the Walnut Street house without power.

emergency protective custody by law enforcement . . . a preliminary investigation to determine whether grounds for assuming legal custody of the child exist and whether reasonable means exist for avoiding removal of the child from the home of the parent or guardian or for placement of the child with a relative and means for minimizing the emotional impact on the child of separation from the child's home and family.").  Here, Officer Faulkenberry testified that he attempted to find relative placements for the children, but initially Mother was not cooperative. When alternative caregivers were made known to DSS and the family court, the children were placed in their temporary custody until they were returned to Mother.

**AFFIRMED.**

**LOCKEMY, C.J., WILLIAMS and MCDONALD, JJ., concur.**