492 S.E.2d 408

**The STATE, Respondent,**

v.

**Jerome BURROUGHS, Appellant.**

**No. 2726.**

Court of Appeals of South Carolina.

Heard Sept. 9, 1997.

Decided Sept. 29, 1997.

---

490

492

Fred Henderson Moore, Charleston, for appellant.

Attorney General Charles Molony Condon, Deputy Attorney General John W. McIntosh, Assistant Deputy Attorney Salley W. Elliott, Assistant Attorney General G. Robert DeLoach, III, Columbia; and Solicitor Ralph J. Wilson, Conway, for respondent.

HOWELL, Chief Judge.

Jerome Burroughs appeals from his conviction for third-degree criminal sexual conduct. We reverse and remand for a new trial.

## I.

According to the evidence presented by the State, Burroughs met the victim at magistrate's court in Conway, South Carolina, in January 1994. When Burroughs learned that the victim and her children were being evicted, he offered to let her rent a house he owned in Andrews. Because Burroughs had to make repairs on the house, the victim and her children stayed at a hotel in Conway for two weeks and another in Andrews for one week. The victim and her children moved into the rental house in February 1994. Between February and November, Burroughs occasionally came by the house to make repairs and collect rent.[1]

---

1. However, the victim admitted on cross-examination that she did not pay any rent during the time she lived in Burroughs's house.

During the period the victim lived in the hotels, she occasionally spoke to Burroughs about the house, but she testified that Burroughs never visited her at the hotel. The victim denied ever having a romantic or sexual relationship with Burroughs. Although the victim's husband did not stay with his family at the hotels, he did at some point move into the rental house. The victim testified that Burroughs always knew she was married.

The victim testified that sometime around 12:30 p.m. on November 10, 1994, Burroughs came by her house to give her a notice from the water company. After briefly speaking about the victim's upholstery business, Burroughs asked the victim if he could hug her. She refused, but he approached her nonetheless. Despite the victim's repeated refusals, Burroughs pushed her onto the sofa and raped her. After the act was completed, Burroughs wiped himself off with a washcloth and left. The victim testified that, although Burroughs did not threaten her, she did not physically resist his advances or attempt to flee because she did not know what Burroughs was capable of and she feared for her life.

At approximately 7:00 p.m. that evening, the victim finally told her husband about the rape. He took her to the police station, where she filed a report. An examination of the victim at the emergency room revealed the presence of nonmotile sperm, but no bruises, lacerations, or vaginal trauma. Serological and DNA analysis performed on the samples taken from the victim indicated that Burroughs was the source of the sperm.

In his defense, Burroughs testified that the victim told him she was not married, and that he and the victim began a sexual relationship while she was staying at the hotel in Conway. Burroughs claimed that the sexual relationship continued after she moved into the rental house, but that he became concerned after the victim's husband (who the victim had introduced to Burroughs as her ex-boyfriend) kept "stopping by." Burroughs admitted having sex with the victim on the day in question, but contended the sex was consensual.

The trial court directed a verdict on the charges of first-degree criminal sexual conduct and kidnapping, submitting only the charge of third-degree criminal sexual conduct to the

jury. The jury convicted Burroughs of the charge, and the trial court sentenced him to ten years.

## II.

On appeal, Burroughs first argues that he was entitled to a directed verdict on the charge of third-degree criminal sexual conduct because "the failure of [the] sexual battery victim to reject or otherwise resist [Burroughs's] foreplay for sexual consummation precludes the crime of sexual battery." We disagree.

When ruling on a motion for a directed verdict, the trial court is concerned with the existence of evidence, not with its weight. If, when viewed in the light most favorable to the State, there is any direct or substantial circumstantial evidence which reasonably tends to prove the guilt of the accused, refusal by the trial court to direct a verdict is not error. *State v. Long,* 325 S.C. 59, 480 S.E.2d 62 (1997); *State v. Williams,* 321 S.C. 327, 468 S.E.2d 626, *cert. denied,* —— U.S. ——, 117 S.Ct. 230, 136 L.Ed.2d 161 (1996).

In this case, the victim testified that Burroughs had sex with her despite her repeated refusals and that she was in fear for her life. This testimony alone was sufficient to send to the jury the charge of third-degree criminal sexual conduct. *See* S.C.Code Ann. § 16–3–654(1)(a) (1987) ("A person is guilty of criminal sexual conduct in the third degree if the actor engages in sexual battery with the victim and if . . . [t]he actor uses force or coercion to accomplish the sexual battery in the absence of aggravating circumstances."); *State v. Hamilton,* 276 S.C. 173, 177–78, 276 S.E.2d 784, 786 (1981) (As used in section 16–3–654, "force" and "coercion" mean to " 'force one's will on someone;' " thus, "criminal sexual conduct in any degree means 'that the sexual battery occurred under circumstances where the victim's consent was lacking.' "). That Burroughs disagreed with the victim's story and testified that the encounter was consensual does not entitle Burroughs to a directed verdict, but instead creates a credibility issue to be resolved by the jury. *See, e.g., State v. Ham,* 268 S.C. 340, 342, 233 S.E.2d 698, 698 (1977) ("Where the determination of guilt is dependent upon the credibility of the witnesses, a motion for a directed verdict is properly refused."), *cert.*

*denied,* 434 U.S. 1019, 98 S.Ct. 740, 54 L.Ed.2d 765 (1978). Accordingly, the trial court did not err in denying Burroughs's motion for directed verdict.[2]

## III.

Burroughs was tried in February 1996, more than a year after the incident occurred. Burroughs argues on appeal that the charges against him should be dismissed because the delay in bringing his case to trial violated his constitutional rights to a speedy trial. We disagree.

Burroughs concedes in his brief that he never raised the speedy trial issue below. South Carolina has no "plain error" rule. *State v. Hudgins,* 319 S.C. 233, 239, 460 S.E.2d 388, 391 (1995), *cert. denied,* 516 U.S. 1096, 116 S.Ct. 821, 133 L.Ed.2d 764 (1996). Thus, Burroughs's failure to raise the speedy trial issue below precludes us from considering the issue on appeal. *See, e.g., Hudgins,* 319 S.C. at 239, 460 S.E.2d at 391 (refusing to address constitutional issue that was not raised at trial); *State v. McKinney,* 278 S.C. 107, 292 S.E.2d 598 (1982) (rule requiring contemporaneous objection extends to constitutional claims).

## IV.

Over Burroughs's objections, the trial court allowed the police officer who first took the victim's statement and a nurse who examined the victim in the emergency room to testify about the victim's statements to them describing the assault. Among the details of the assault recounted by the witnesses was that the victim told them that, before he raped her, Burroughs asked the victim if he could have a hug. On appeal, Burroughs contends the testimony was hearsay and amounted to impermissible bolstering of the victim's trial testimony. We agree.[3]

---

2. Burroughs also argues in passing that "[n]o corpus delicti is established on the uncorroborated testimony of the assault victim." This argument ignores S.C.Code Ann. § 16–3–657 (1987), which provides that in prosecutions for criminal sexual conduct, "the testimony of the victim need not be corroborated."

3. In his brief, Burroughs lumps his challenge to this testimony and a challenge to a *Lyle* witness under the same broad issue on appeal, and

██ In criminal sexual conduct cases, a prior consistent statement made by a testifying victim is not considered to be hearsay if the statement is "limited to the time and place of the incident." Rule 801(d)(1)(D), SCRE; *see also Jolly v. State*, 314 S.C. 17, 20, 443 S.E.2d 566, 568 (1994) ("[I]n criminal sexual conduct cases, when the victim testifies, evidence from other witnesses that she complained of the sexual assault is admissible in corroboration, limited to the time and place of the assault and excluding details or particulars."). In this case, the testimony of the officer and the nurse clearly went beyond the victim's statements regarding the time and place of the incident.[4] Because the challenged testimony does not meet the requirements of Rule 801(d)(1)(D), it must be considered hearsay. *See* Rule 801(c), SCRE (" 'Hearsay' is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted."). Accordingly, the testimony was properly admitted only if it falls within one of the established exceptions to the general rule that hearsay is inadmissible. *See* Rule 802, SCRE ("Hearsay is not admissible except as provided by these rules or by other rules

---

his arguments jump back and forth between the issues. Generally, separate issues should be set forth and argued separately. *See* Rule 207(b), SCACR. Nevertheless, we conclude Burroughs's brief sufficiently raises the question of whether the trial court improperly admitted the corroborating hearsay testimony.

4. As to Burroughs's objection to the testimony of the nurse, the trial court ruled that the witness could not "go into the minute detail of it, just generally, time, place, person, event; time place, person, what happened. That's it." It was after this ruling that the nurse recounted the victim's statement that Burroughs had asked for a hug. The State argues that because Burroughs did not object that the nurse's testimony went beyond the trial court's ruling or move to strike the testimony, Burroughs cannot complain about the testimony on appeal. We disagree. First, the nurse's testimony recounted "what happened"; thus, the testimony did not go beyond the scope of the trial court's ruling. Moreover, Burroughs timely objected to the testimony, and the trial court ruled on the objection. While the court's ruling was clearly in error, given that it allowed a much broader range of information to be given than permitted under Rule 801(d)(1)(D), Burroughs was not required to re-urge his objection after the trial court ruled. *See* Rule 18(a), SCRCrimP ("Counsel shall not attempt to further argue any matter after he has been heard and the ruling of the court has been pronounced.").

prescribed by the Supreme Court of this State or by statute."). We consider below each of the possible exceptions applicable to this case.[5]

■ Prior to the adoption of the Rules of Evidence, South Carolina law provided for a *res gestae* exception to the hearsay rule. Under this exception, a hearsay statement was admissible if the statement was substantially contemporaneous with the litigated transaction and was the spontaneous utterance of the mind while under the active, immediate influence of the event. *See, e.g., State v. Kelley,* 319 S.C. 173, 460 S.E.2d 368 (1995); *State v. Blackburn,* 271 S.C. 324, 247 S.E.2d 334 (1978); *State v. Dennis,* 321 S.C. 413, 468 S.E.2d 674 (Ct.App. 1996); *State v. McFadden,* 318 S.C. 404, 458 S.E.2d 61 (Ct. App.1995), *cert. denied* (March 21, 1996).

■ However, there is no single *res gestae* exception included in the South Carolina Rules of Evidence. Instead, the Rules establish a "present sense impression" exception, which makes admissible a hearsay "statement describing or explaining an event or condition made while the declarant was perceiving the event or condition, or immediately thereafter," Rule 803(1), SCRE, and an "excited utterance" exception, which makes admissible a hearsay "statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition." Rule 803(2), SCRE. These exceptions are identical to those contained in the Federal Rules of Evidence. *See* Reporter's Note, Rule 803, SCRE.

■ Comparing the exceptions under the Rules to the pre-Rules *res gestae* exception, it is apparent that the former *res gestae* exception largely combined the current requirements of subsections (1) and (2). *See Blackburn,* 271 S.C. at 329, 247

---

**5.** The challenged testimony in this case—that the victim said Burroughs began the assault by asking for a hug—would more precisely be called double hearsay, or hearsay within hearsay. Under Rule 805, "[h]earsay included within hearsay is not excluded under the hearsay rule if each part of the combined statements conforms with an exception to the hearsay rule provided in these rules." Rule 805, SCRE. Clearly, Burroughs's statement is admissible under Rule 801(d)(2)(A) (defining as not hearsay a statement made by a party). Thus, the real issue in this case is whether the victim's statement is admissible under any exception to the hearsay rule.

S.E.2d at 337 ("Under state practice, ... the statement must be both an excited utterance and a present sense impression to be admitted as a part of the *res gestae.*"). Thus, a statement that satisfied one subsection but not the other would not have been admissible under the former *res gestae* exception, but is now admissible under the Rules. *See* Reporter's Note, Rule 803, SCRE (Rules 803(1) and 803(2) "constitute a change in South Carolina law. Previously, a statement had to meet the conditions of both subsections (1) and (2) before it would be admissible under the *res gestae* exception to the hearsay rule."). Nonetheless, given that the pre-Rules *res gestae* cases contained the essential requirements of Rule 803(1) and Rule 803(2), those cases remain helpful when determining whether a statement is admissible under the Rules.

 In this case, the testimony of the nurse and the police officer is not admissible as a present sense impression. The victim gave her story to the officer at approximately 10:30 p.m., and she did not report to the hospital until approximately 11:00 p.m., nearly ten hours after the incident. Given this lapse of time, it cannot be said that the victim made the statements while she was "perceiving the event or condition, or immediately thereafter," as required by Rule 803(1).

 Whether the statements are admissible under Rule 803(2), however, is a somewhat closer question. "The rationale for the [excited utterance] exception lies in the special reliability accorded to a statement uttered in spontaneous excitement which suspends the declarant's powers of reflection and fabrication." *Blackburn,* 271 S.C. at 327, 247 S.E.2d at 336; *see also State v. Farmer,* 185 W.Va. 232, 406 S.E.2d 458, 462 (1991) ("[A]n excited utterance or spontaneous declaration is admissible as an exception to the hearsay rule under the premise that a person stimulated by the excitement of an event and acting under the influences of that event will lack the reflective capacity essential for fabrication."). Thus, the mere fact that a statement was made some time after the incident occurred does not mean the statement cannot qualify as an excited utterance, provided that the circumstances surrounding the statement indicate its reliability. *See Bain v. Self Memorial Hosp.,* 281 S.C. 138, 147, 314 S.E.2d 603, 609

(Ct.App.1984) (Admitting under the *res gestae* exception a statement made by a doctor shortly after the patient's death where "the circumstances here and the time frame within which the statement was made reasonably preclude deliberate design to make a false or self-serving statement."); *see also* 31A C.J.S. *Evidence* § 351 (1996) ("[T]he utterance must have been made before there was time to contrive and misrepresent, and before there was a break in the continuity which afforded time for reflection."); 2 John William Strong, *McCormick on Evidence* § 272 (4th ed. 1992) ("A useful rule of thumb is that where the time interval between the event and the statement is long enough to permit reflective thought, the statement will be excluded in the absence of some proof that the declarant did not in fact engage in a reflective thought process."). Under the circumstances of this case, we conclude that the victim's statements to the police officer and nurse do not qualify as excited utterances.

As noted above, the statements to the officer and nurse were made approximately ten hours after the incident. Immediately after the incident, the victim did not speak to anyone about the attack. When her children came home from school at 3:00 p.m., she said nothing to them, nor did she say anything to her husband when he came home at 5:30 p.m. It was not until after supper, when her husband had been home for approximately an hour, that the victim told him she had been raped, and it was still several hours later that she gave her statements to the officer and the nurse. This extended time period, during which the victim had ample opportunity to report the incident, provided a great deal of time for reflection. *Cf. State v. Cox*, 274 S.C. 624, 266 S.E.2d 784 (1980) (statement made an unspecified time after the incident admissible as part of the *res gestae* where the victim made the statement at the first opportunity). In fact, the victim's own testimony indicates that she used the hours after the attack to compose herself and decide exactly how to tell her husband about what had happened.[6] Moreover, although we recognize that a sexual assault is an extremely traumatic event and that the victim was certainly upset by the attack, the evidence in the record indicates that, at the time she made the statements,

---

6. The victim testified that, "I was upset and I didn't know how to tell my husband. That's why I waited to tell him."

the victim was not so distraught that her statements could be considered spontaneous rather than the product of reflective thought.[7] *See State v. Harrison*, 298 S.C. 333, 337, 380 S.E.2d 818, 820 (1989) (Victim's statements made to police investigator 15 hours after the incident were not admissible as part of the *res gestae* because the victim "was no longer under the active, immediate influence of the event."); *State v. Dawson*, 203 S.C. 167, 170, 26 S.E.2d 506, 508 (1943) (Statement made in the hospital by the victim approximately 12 hours after receiving wounds that would prove to be fatal "[b]y no stretch of the imagination could ... be termed a part of the *res gestae*."). Thus, given the circumstances surrounding and leading up to the victim's statements, we cannot conclude that her statements carry the indicia of reliability traditionally underlying excited utterances. Accordingly, the statements were not admissible under the excited utterance exception to the hearsay rule.

The only other exception to the hearsay rule that might apply to the testimony at issue is found in Rule 803(4), SCRE. Consistent with the prior practice in this State, "[s]tatements made for purposes of medical diagnosis or treatment and describing medical history, or past or present symptoms, pain, or sensations, or the inception or general character of the cause or external source thereof insofar as reasonably pertinent to diagnosis or treatment" are admissible. Rule 803(4), SCRE. Certainly, a statement that the victim had been raped or that the assailant had hurt the victim in a particular area would be pertinent to the diagnosis and treatment of the victim. In this case, however, the fact that Burroughs asked if he could have a hug before he assaulted the victim in no way can be viewed as "reasonably pertinent" to the victim's diagnosis or treatment. *Cf. State v. Brown*, 286 S.C. 445, 447, 334 S.E.2d 816, 817 (1985) (Trial court improperly allowed doctor to relate child's statement that he had been assaulted by "Mr. Carl," because the identity of the assailant

---

7. The police officer testified that the victim "was obviously upset; however, I was impressed with the way that she handled herself and told me exactly what needed to be told in that situation, and I was impressed with her demeanor." There was no testimony about the victim's emotional condition when she made her statements to the nurse.

is not necessary for diagnosis or treatment. "A doctor's testimony as to history should include only those facts related to him by the victim upon which he relied in reaching his medical conclusions."). Thus, the nurse's testimony was not admissible under Rule 803(4).

 Because we have concluded that there is no exception to the hearsay rule that would support the admission of the challenged testimony, we must now determine whether Burroughs was prejudiced by its improper admission. We conclude that he was.

At trial, the victim testified that, before he raped her, Burroughs asked if he could have a hug, and the improperly admitted testimony of the officer and the nurse corroborated the victim's description of the assault. As we will explain below, this portion of the victim's story proved to be extremely important to the State's case against Burroughs.

The State presented three witnesses who testified that Burroughs assaulted them. The first witness testified that Burroughs had been making repairs on her mobile home, which had been damaged during Hurricane Hugo. One morning at approximately 6:30, she was awakened by someone knocking at her back door, which was located just outside of her bedroom door. Assuming it was her fiance at the door, the witness got out of bed, unlocked the door, and immediately returned to bed. When she did not hear her fiance's voice, she rolled over and saw Burroughs standing beside her bed. The witness testified that she jumped out of bed and asked Burroughs to go into the living room. According to the witness, Burroughs responded that he just wanted a hug, stepped into her bedroom, and then raped her.

The second witness testified that when she was eleven or twelve years old, Burroughs was hired to make repairs to her family's mobile home. She testified that while she was in the bathroom helping Burroughs measure the wall, he asked her for a "birthday hug." Burroughs then hugged her and began "rubbing [her] butt and feeling of [her] chest."

The third witness testified that Burroughs, who again had been making some repairs on her mobile home, accosted her in the hallway of her home, pushing her up against the wall and kissing her. She pushed him away and then ran out to her car.

Thus, the jury in this case was presented with evidence of four different assaults by Burroughs, three of which were commenced by Burroughs asking the victim for a hug. While the victim's statement that Burroughs asked her for a hug might be an insignificant detail when considering her story alone, it becomes a very important detail after considering the stories of the other victims. Under these circumstances, the improper corroboration of the victim's testimony that resulted from the erroneous admission of the testimony of the police officer and nurse cannot be considered harmless. *See Jolly v. State,* 314 S.C. 17, 21, 443 S.E.2d 566, 569 (1994) ("Improper corroboration testimony that is merely cumulative to the victim's testimony, however, cannot be harmless, because it is precisely this cumulative effect which enhances the devastating impact of improper corroboration."). We therefore conclude that the admission of the improper corroborating testimony is error requiring reversal.[8]

## V.

To summarize, we conclude that the trial court properly denied Burroughs's motion for directed verdict, and that Burroughs failed to preserve for appeal the question of whether his right to a speedy trial was violated. However, we conclude that the trial court erred by admitting the testimony of the police officer and nurse recounting the victim's statement to them that Burroughs asked the victim for a hug, and that this evidence amounted to improper corroboration of the victim's testimony.[9] Accordingly, for the foregoing reasons, we hereby

[8]. The State, however, argues that any error in the admission of the testimony was harmless because the evidence was cumulative to evidence of *other* details of the assault. We disagree. While it is true that Burroughs did not object to other details of the assault testified to by the police officer. Burroughs did object each time a witness testified about the request for a hug. Burroughs's failure to object to other improper evidence simply does not amount to a waiver of his proper and timely objection to this particular evidence. Nor does the fact that other details of the victim's story were corroborated in any way lessen the impact of the improper corroboration of the victim's testimony regarding Burroughs's request for a hug.

[9]. Given our disposition of this issue, we need not address Burroughs's argument on appeal relating to the testimony of one of the *Lyle* witnesses.

504

reverse Burroughs's conviction and remand the case for a new trial.

**REVERSED and REMANDED.**

HEARN and STILWELL, JJ., concur.