# THE STATE OF SOUTH CAROLINA
## In The Supreme Court

The State, Respondent,

v.

James Simmons Jr., Petitioner.

Appellate Case No. 2016-001934

---

## ON WRIT OF CERTIORARI TO THE COURT OF APPEALS

---

Appeal from Beaufort County
Carmen T. Mullen, Circuit Court Judge

---

Opinion No. 27819
Heard April 17, 2018 – Filed June 27, 2018

---

## REVERSED AND REMANDED

---

Appellate Defender Susan B. Hackett, of Columbia, for Petitioner.

Attorney General Alan Wilson and Assistant Attorney General William M. Blitch, Jr., both of Columbia, for Respondent.

---

**JUSTICE KITTREDGE:** Petitioner James Simmons Jr. was convicted of criminal sexual conduct (CSC) involving two minors (Minor 1 and Minor 2, collectively the "minors"). The minors are Petitioner's twin sons. A key feature of the State's case was the challenged testimony of a pediatrician admitted pursuant to Rule 803(4), SCRE, which provides a hearsay exception for statements made in

connection with medical diagnosis or treatment. The court of appeals affirmed, first questioning whether Petitioner's challenge was preserved, and then concluding the pediatrician's testimony was properly admitted. We reverse the court of appeals and remand for a new trial. For the reasons we will explain, Petitioner preserved his objection to the pediatrician's purported Rule 803(4), SCRE, testimony, and the admission of the hearsay statements in this case was blatantly improper. This improper testimony was nothing more than hearsay shrouded in a doctor's white coat, in violation of the South Carolina Rules of Evidence.

Petitioner's twin sons accused him of sexually assaulting them while they were approximately eight years old. Petitioner was convicted by a jury of two counts of criminal sexual conduct (CSC) with a minor. This appeal centers on whether the admission of a pediatrician's testimony, conveying Minor 1's statements, was appropriate under the hearsay exception for statements made for and reasonably pertinent to medical diagnosis or treatment. These statements were made to the minors' regular treating pediatrician two years after the alleged abuse occurred. The statements alleged more than the claim of sexual abuse but also named Petitioner as the perpetrator, alleged that pornography had been viewed and that a secret pact had been made. We further find this error was not harmless beyond a reasonable doubt. Therefore, we reverse the court of appeals and remand to the trial court for a new trial.

## I.

The minors were born in 2000. From the time that they were eight months old, the twin minors were cared for by relatives. The minors grew up on the family's land—a property with several houses on it located in Saint Helena Island, South Carolina. Throughout their childhood, the minors were treated by their regular pediatrician, Dr. James Simmons.[1] In 2008, while the minors were staying with their cousin Rose, Petitioner returned to the family property to live in the family house[2] located next door to Rose's home. The minors spent time at both houses and visited with Petitioner. Petitioner left the family house in the summer of 2009.

---

[1] Dr. James Simmons is not related to Petitioner.

[2] This residence was described during the trial as the house on the property where family members were welcome to stay when they fell on hard times.

Near the end of 2009, Rose requested additional assistance with the minors from their granduncle Johnnie and grandaunt Cynthia.[3]

Cynthia testified that she and Johnnie began watching the minors in 2009. During one of their visits, Cynthia testified that she suspected something was wrong, especially as to Minor 1. Cynthia, however, did not confront Minor 1, bring him to a doctor, or report her concern to law enforcement. Instead, Cynthia returned Minor 1 and his brother to Rose because she was uncertain of what was wrong and did not want to jump to conclusions or wrongly blame someone.

In May 2010, the minors moved to Johnnie and Cynthia's home, which is located in Early Branch, South Carolina. Johnnie and Cynthia eventually adopted the minors in the spring of 2011. Prior to adopting the minors, Cynthia was suspicious that the minors had been sexually abused. Cynthia took the minors to a counselor, who concluded nothing was wrong with them.

Following the adoption, Cynthia confronted the minors in September of 2011, and they allegedly disclosed that Petitioner had sexually abused them at Saint Helena Island approximately two years earlier. The next day, Cynthia made an appointment to take the minors to Dr. Simmons. Cynthia informed Dr. Simmons that the minors had disclosed they were sexually abused.

Dr. Simmons interviewed Minor 1 and, after Minor 1 made several statements regarding the sexual abuse, Dr. Simmons terminated the interview to contact law enforcement and report the disclosure.

## II.

Petitioner was charged with two counts of CSC with a minor in the first degree. At trial, the State called several witnesses: Dr. James Simmons, Investigator Jeremiah Fraser, cousin and previous caretaker Rose Simmons, Minor 1, Minor 2, forensic interviewer Ashley Bratcher, adoptive mother Cynthia Simmons, adoptive father Johnnie Simmons, and Nurse Kristin Dalton.

The first witness that the State called was Dr. Simmons, who was qualified as an expert in pediatric medicine. It is a portion of his testimony that is at issue in this appeal. After qualifying him, the State questioned Dr. Simmons about his

---

[3] Johnnie and Cynthia had been taking care of the minors intermittently on weekends and at other times to help Rose.

examination of the minors:[4]

> **Q:** And Doctor, can you tell me what -- in talking to Minor 1 what he told you happened?
>
> **[Defense Counsel]:** Your Honor, I object. It's hearsay. It's objectionable under *803*. And certainly, he could limit it to the child's disclosure of date and time, and that's it.
>
> **[The State:]** Judge, we'd say that this is under the hearsay exception, *803*. Excuse me, let me pull it up. *803*.
>
> **The Court:** For medical diagnosis?[5]
>
> **[The State]:** For medical -- purpose of medical diagnosis, exactly.
>
> **The Court:** You can go ahead.
>
> **[The State:]** Thank you.
>
> **[Defense Counsel:]** I did -- well --
>
> **Q [by the State]**: Dr. Simmons, can you tell me what Minor 1 told you happened?
>
> . . . .
>
> **A:** Yeah. He said, basically -- basically, he said his -- his father, that

---

[4] Dr. Simmons appears to refer to both minors by using the terms "they" or "them."

[5] Under Rule 803(4), SCRE, the following are not excluded by the hearsay rule:

> Statements made for purposes of medical diagnosis or treatment and describing medical history, or past or present symptoms, pain, or sensations, or the inception or general character of the cause or external source thereof insofar as reasonably pertinent to diagnosis or treatment; provided, however, that the admissibility of statements made after commencement of the litigation is left to the court's discretion.

he'd been watching porn, and that they [sic] had told him not to tell anybody because of their secret pact. And that I believe that his daddy had -- his father had touched his private area.

**Q:** Touched his private area. Do you recall more specifically what Minor 1 said?

**A:** I believe -- I believe he said his penis.

. . . .

**A:** . . . I asked him what happened, and he said that -- I talked with them separately, and that Dad made them, and I have in quotations, quote/unquote, *Dad made them suck his penis*; and that the episode ended when he was -- when the custody of Mr. Johnnie Simmons. And that, also, they had been watching porno, and he said not to tell them because of the secret pact with Dad.

Dr. Simmons further testified that he performed physical examinations on both minors and found no physical signs of trauma or abuse.

On cross-examination, Dr. Simmons admitted that he did not suspect abuse until Cynthia brought the minors to him with the sexual abuse allegation, even though he had treated them for most of their lives—from approximately eight months old until eleven years old, which was a year and a half before the trial. Furthermore, Dr. Simmons acknowledged that the minors had exhibited physical and behavioral issues prior to Petitioner re-entering their lives, while Petitioner resided next door to them, and after his departure.[6] Moreover, at least months prior to the disclosure, Dr. Simmons had made a referral to a psychiatrist or therapist—Dr. Payne—for the minors; however, the State did not call Dr. Payne to testify.

After the State finished presenting its case, Petitioner called several witnesses to the stand. A few of these witnesses had lived in the family house during a portion of the time that the minors alleged they were abused. For example, Petitioner's

---

[6] For example, the minors had experienced constipation, an irritated penis, trouble sleeping, behavioral issues at school, and bed wetting. In addition, Dr. Simmons diagnosed the minors with attention deficit disorder (A.D.D.) as well as possible opposition defiance disorder, which "tends to go along with A.D.D. on many occasions."

sister, Paulette Crockett, lived in the family house with Petitioner, her husband, and her three kids for approximately one year and Petitioner's ex-girlfriend, Mahogany Washington, resided at the family house with Petitioner and her minor son for a period of time. These witnesses testified that they did not see Petitioner sexually abuse the minors. In addition, they did not believe anything inappropriate had occurred during the time they resided in the family house.

After deliberating for several hours, the jury informed the trial court that it was deadlocked. The trial court gave an *Allen*[7] charge and sent the jury back to continue deliberating. Ultimately, the jury returned guilty verdicts on both counts. Petitioner was sentenced to two concurrent life sentences.

On appeal, Petitioner argued his convictions and sentences should be reversed because Dr. Simmons' testimony was improperly admitted and the error was not harmless beyond a reasonable doubt. The court of appeals affirmed Petitioner's convictions and sentences in an unpublished opinion. *State v. Simmons*, Op. No. 2016–UP–182 (S.C. Ct. App. filed Apr. 20, 2016). The court of appeals questioned whether Petitioner's objection to Dr. Simmons' testimony was preserved but held, "[e]ven on the merits," that the trial court did not err in admitting the testimony and cited cases regarding harmless error. This Court granted Petitioner's petition for a writ of certiorari regarding Dr. Simmons' testimony.

### III.

"The admission or exclusion of evidence is a matter addressed to the sound discretion of the trial court and its ruling will not be disturbed in the absence of a manifest abuse of discretion accompanied by probable prejudice." *State v. Kromah*, 401 S.C. 340, 349, 737 S.E.2d 490, 494–95 (2013) (quoting *State v. Douglas*, 369 S.C. 424, 429, 632 S.E.2d 845, 847–48 (2006)). "An abuse of discretion occurs when the conclusions of the trial court either lack evidentiary support or are controlled by an error of law." *Id.* at 349, 737 S.E.2d at 495 (quoting *Douglas*, 369 S.C. at 429–30, 632 S.E.2d at 848).

There are three main issues before this Court. First, is Petitioner's objection regarding Dr. Simmons' testimony preserved for appellate review? Second, was Dr. Simmons' testimony concerning Minor 1's statements improperly admitted? Third, if improperly admitted, was Dr. Simmons' testimony harmless beyond a reasonable doubt in light of the other testimony provided at trial? We address each

---

[7] *See Allen v. United States*, 164 U.S. 492, 501–02 (1896).

of these issues in turn.

## A.

The State contends Petitioner's objection at trial was insufficient to preserve his argument that Dr. Simmons' testimony was hearsay because he failed to object again after the trial judge allowed the testimony under an exception to hearsay—statements made for purposes of medical diagnosis or treatment. Rule 803(4), SCRE. The State attempts to push issue preservation too far.

"There are four basic requirements to preserving issues at trial for appellate review." *S.C. Dep't of Transp. v. First Carolina Corp. of S.C.*, 372 S.C. 295, 301–02, 641 S.E.2d 903, 907 (2007) (quoting Jean Hoefer Toal et al., *Appellate Practice in South Carolina* 57 (2d ed. 2002)). "The issue must have been (1) raised to and ruled upon by the trial court, (2) raised by the appellant, (3) raised in a timely manner, and (4) raised to the trial court with sufficient specificity." *Id.* All four requirements were met in this case.

Here, immediately after the question posed by the State—"can you tell me what . . . [Minor 1] told you happened?"—Petitioner objected on the specific basis of hearsay. Petitioner acknowledged that the response was allowed to reveal Minor 1's disclosure of the date and time of the alleged abuse as provided by Rule 801(d)(1)(D), SCRE; however, Petitioner emphasized that other information would be considered hearsay. The State countered that the testimony would be admissible under a hearsay exception in Rule 803, SCRE. The trial court suggested the hearsay exception for medical diagnosis to the State, which the State then asserted. Subsequently, the trial court—aware of the open-ended nature of the question and the strong likelihood that improper hearsay testimony would be produced—overruled Petitioner's objection on the ground that the response would fall within the hearsay exception for statements made for medical diagnosis or treatment. Thus, Petitioner's timely objection was sufficient to apprise the trial court of the issue being raised. *See, e.g.*, *State v. Byers*, 392 S.C. 438, 444, 710 S.E.2d 55, 58 (2011) ("For an objection to be preserved for appellate review, the objection must be made at the time the evidence is presented and with sufficient specificity to inform the circuit court judge of the point being urged by the objector." (citations omitted)). A second objection was not necessary in this case. Petitioner was not required to be a jack-in-the-box to Dr. Simmons' response to this question to preserve his objection. *See State v. Burroughs*, 328 S.C. 489, 504 n.4, 492 S.E.2d 408, 415 n.4 (Ct. App. 1997) ("While the court's ruling was clearly in error, given that it allowed a much broader range of information to be given than

permitted under Rule 801(d)(1)(D), Burroughs was not required to re-urge his objection after the trial court ruled.").

The State's preservation argument is manifestly without merit. Petitioner's challenge to the evidence is preserved.

**B.**

Petitioner asserts that the trial court erred in admitting the challenged testimony because Minor 1's statements were not made to Dr. Simmons for the purpose of medical diagnosis or treatment. The State contends that Dr. Simmons' testimony was proper under the hearsay exception as statements made for the purpose of medical diagnosis or treatment because Dr. Simmons was the minors' regular pediatrician and had previously diagnosed them with A.D.D., so "[t]he statements in question were made by [Minor 1] to Dr. Simmons . . . for the purpose of obtaining treatment for physical and emotional trauma, as well as on-going behavioral symptoms." Under these facts, there is no arguable basis to uphold this hearsay testimony under Rule 803(4), SCRE.

The primary method of providing corroborating testimony regarding an alleged sexual assault is through the specific rule created for CSC cases—Rule 801(d)(1)(D), SCRE. *See id.*, Note ("Subsection (D), which is not contained in the federal rule, was added to make admissible in criminal sexual conduct cases evidence that the victim complained of the sexual assault, limited to the time and place of the assault."). This rule "limits corroborating testimony . . . to the time and place of the assault(s)" and considers it to be nonhearsay whereas "any other details or particulars, including the perpetrator's identity," are generally considered hearsay and must be excluded unless they fall within an exception. *Thompson v. State*, Op. No. 27785 (S.C. Sup. Ct. filed Mar. 21, 2018) (citation omitted).

Thus, should the proponent desire more information beyond the permissible "time and place" evidence, a rule or statute must allow for the admission of the additional evidence. Typically, as in this case, the additional evidence constitutes hearsay. Rule 801, SCRE. "'Hearsay' is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Rule 801(c), SCRE. "Hearsay is inadmissible except as provided by the South Carolina Rules of Evidence, by other court rule, or by statute." *State v. Jennings*, 394 S.C. 473, 478, 716 S.E.2d 91, 93 (2011) (citing Rule 802, SCRE).

After an objection is raised, the proponent of hearsay testimony has the burden of showing it fits appropriately within a hearsay exception. At issue here is whether Dr. Simmons' testimony, which relayed statements far beyond the time and place of the alleged sexual assaults, falls within the hearsay exception regarding "[s]tatements made for purposes of medical diagnosis or treatment." Rule 803(4), SCRE.

This hearsay exception requires that the statements be provided for the purpose of and be reasonably pertinent to medical diagnosis or treatment. Rule 803(4), SCRE. Rule 803(4), SCRE, may well apply in a CSC case, but there must be a nexus between the information provided by the patient and the diagnosis or treatment of the patient. For example, after recent trauma, these type of statements can provide the doctor with specific areas to focus on or specific conditions to search for when performing the diagnostic physical exam and are reasonably pertinent to diagnosis or treatment. In this regard, "a statement that the victim had been raped or that the assailant had hurt the victim in a particular area would be pertinent to the diagnosis and treatment of the victim." *State v. Burroughs*, 328 S.C. 489, 501, 492 S.E.2d 408, 414 (Ct. App. 1997). However, "[a] doctor's testimony as to history should include only those facts related to him by the victim upon which he relied in reaching his medical conclusions. The doctor's testimony should never be used as a tool to prove facts properly proved by other witnesses." *State v. Brown*, 286 S.C. 445, 447, 334 S.E.2d 816, 817 (1985); *see also* Rule 803(4), SCRE, Note (stating a "physician's testimony should include only those statements related to him by the patient upon which the physician relied in reaching medical conclusions" (citing *State v. Camele*, 293 S.C. 302, 360 S.E.2d 307 (1987)).

The challenged testimony conveyed several statements by Minor 1 that went well beyond the Rule 803(4), SCRE, hearsay exception. It is manifest that certain statements made to Dr. Simmons were not made for the purposes of medical diagnosis or treatment.

Petitioner left the family house in the summer of 2009. In October 2009 or thereafter, Cynthia began to suspect that the minors may have been sexually abused. The minors were subsequently brought to a counselor who found nothing wrong. In September of 2011, after the minors disclosed the alleged abuse, they were brought to Dr. Simmons—which was more than two years after the alleged abuse occurred. During trial, the length of time that the minors had been treated by Dr. Simmons was highlighted—from the time they were eight months old, through the time of the alleged abuse, and up until a year and a half before the trial. Dr. Simmons admitted that he did not suspect abuse until Cynthia brought the minors

to him with the allegation.  In addition, Dr. Simmons acknowledged that the minors had exhibited physical and behavioral concerns prior to Petitioner re-entering their lives.

In addition, Dr. Simmons' physical examinations of the minors resulted in no signs of physical or sexual abuse.  Other items may have been available for proper discussion during Dr. Simmons' testimony; however, "any other details or particulars, including the perpetrator's identity"[8] should have been excluded because they did not fall within the exception raised as statements made for purposes of medical diagnosis or treatment.  *Thompson v. State*, Op. No. 27785 (S.C. Sup. Ct. filed Mar. 21, 2018) (citation omitted).  The same holds true for the testimony related to the viewing of pornography and making of the secret pact, which under these circumstances have no connection to diagnosis or treatment.

This Court will not sanction the State's use of Dr. Simmons as a conduit for this glaringly inadmissible hearsay to be brought before the jury.  If this tactic were permitted, the legitimate use of the Rule 803(4), SCRE, medical diagnosis and treatment exception would be undermined and the general approach of Rule 801(d)(1)(D), SCRE, would be thwarted.  As aptly noted by Petitioner's appellate counsel during oral argument, Dr. Simmons' recounting of Minor 1's statements amounted to nothing more than "hearsay shrouded in a doctor's white coat."

We now turn to whether the error was harmless.

## C.

The State argues that Dr. Simmons' testimony is subject to a harmless error analysis, and we agree.  However, having carefully reviewed the record, we cannot conclude this error was harmless beyond a reasonable doubt.

"Improper admission of hearsay testimony constitutes reversible error only when the admission causes prejudice."  *State v. Jennings*, 394 S.C. 473, 478, 716 S.E.2d 91, 93 (2011) (quoting *State v. Garner*, 389 S.C. 61, 67, 697 S.E.2d 615, 618 (Ct. App. 2010)).  "A harmless error analysis is contextual and specific to the

---

[8] Concerning the statement regarding identity of the alleged abuser, South Carolina generally does not allow a doctor to disclose the identity of the perpetrator through this hearsay exception.  *Brown*, 286 S.C. at 447, 334 S.E.2d at 817 ("The perpetrator's identity would rarely, if ever, be a factor upon which the doctor relied in diagnosing or treating the victim.").

circumstances of the case." *State v. Byers*, 392 S.C. 438, 447, 447–48, 710 S.E.2d 55, 60 (2011). "No definite rule of law governs [a finding of harmless error]; rather the materiality and prejudicial character of the error must be determined from its relationship to the entire case. Error is harmless when it could not reasonably have affected the result of the trial." *Id.* at 447–48, 710 S.E.2d at 60 (quoting *State v. Reeves*, 301 S.C. 191, 193–94, 391 S.E.2d 241, 243 (1990)). If a review of the entire record does not establish that the error was harmless beyond a reasonable doubt, then the conviction shall be reversed. *See State v. Price*, 368 S.C. 494, 499, 629 S.E.2d 363, 366 (2006) (citing *State v. Pickens*, 320 S.C. 528, 531, 466 S.E.2d 364, 366 (1996)).

Given that other witnesses—Investigator Fraser and Nurse Dalton—testified and provided similar information as provided by Dr. Simmons, a harmless error argument may appear plausible. Yet we are not able to find the error harmless beyond a reasonable doubt, especially given the critical importance the State assigned to Dr. Simmons' testimony.

The State highlighted the testimony of Dr. Simmons, calling him as the first witness and emphasizing the importance of his testimony in determining credibility for a case that lacked any physical evidence. In particular, the State's closing argument included the following:

> And the Defense has talked about the boys being inconsistent. And that's something I want you to think about. I want you to think about, and I'm going to point out to you their consistent stories, their consistent accounts of what their father did to them. And the first one we heard on the stand was this account that Minor 1 gave to Dr. Simmons, when Cynthia and Johnnie brought them into his office after their disclosure to her, the first account we heard is that Minor 1 told Dr. Simmons that his dad had touched his penis, and his dad had made him suck his penis, and that they had a secret pact, and that his dad was making them watch porn, pornography. And I submit to you that that is consistent with the other statements that Minor 1 made to both the interviewer at Hope Haven and to you here in this courtroom.

When boiled down to its essence, "[t]here was no physical evidence presented in this case" and "[t]he only evidence presented by the State was the children's accounts of what occurred and other hearsay evidence of the children's accounts." *Jennings*, 394 S.C. at 480, 716 S.E.2d at 94–95. It is simply a bridge too far to conclude that Dr. Simmons' improper testimony was harmless beyond a reasonable

doubt. *See State v. Gracely*, 399 S.C. 363, 377, 731 S.E.2d 880, 887 (2012) ("Based on the Record before this Court, it is impossible to conclude that the trial court's error did not contribute to the verdict beyond a reasonable doubt."); *see also Jennings*, 394 S.C. at 482, 716 S.E.2d at 96 (Kittredge, J., concurring) ("In my judgment, it may be a rare occurrence for the State to prove harmless error beyond a reasonable doubt in these circumstances. But these determinations are necessarily context dependent, and a categorical rule is at odds with longstanding harmless error jurisprudence." (citations omitted)).

## IV.

In sum, the objection to Dr. Simmons' testimony was preserved for appellate review. The hearsay testimony ventured far beyond the parameters of Rule 803(4), SCRE, for much of the testimony was unrelated to medical diagnosis or treatment. And finally, the error was not harmless beyond a reasonable doubt. We reverse the court of appeals and remand the matter to the trial court for a new trial.

**REVERSED AND REMANDED.**

**BEATTY, C.J., HEARN, FEW and JAMES, JJ., concur.**