**THE STATE OF SOUTH CAROLINA**
**In The Court of Appeals**

Elena V. Glinyanay f/k/a Elena V. Tobias, Respondent,

v.

William A. Tobias, Appellant.

Appellate Case No. 2019-001623

———————

Appeal From Greenville County
Matthew P. Turner, Family Court Judge

———————

Opinion No. 5895
Heard October 14, 2021 – Filed February 23, 2022

———————

**AFFIRMED IN PART AND REVERSED IN PART**

———————

Melinda Inman Butler, of The Butler Law Firm, of
Union, for Appellant.

Kenneth Philip Shabel, of Kennedy & Brannon, P.A., and
Rachel Ilene Brough, of Cate & Brough, P.A., both of
Spartanburg, for Respondent.

———————

**HILL, J.:** William A. Tobias (Father) appeals a family court order granting Elena
V. Glinyanay (Mother) sole custody of their two daughters, suspending Father's
visitation rights, ordering Father to undergo a psychological evaluation and complete
any recommended treatment, ordering Father's counselor and daughters' counselor
to determine when Father's visitation could resume, and ordering Father to pay
$12,500 of Mother's attorney's fees and one-half of the guardian ad litem (GAL)
fees. On appeal, Father challenges the admission of out-of-court statements his
daughters made to two counselors and the GAL. Common to these challenges is

Father's claim that admission of the statements denied him due process by depriving him of the right to confront his daughters by cross-examination and to call his oldest daughter as a witness. Father also appeals the family court's decision to continue the suspension of his visitation and delegating the decision as to when his visitation may resume to the counselors. Finally, Father asks us to reverse the family court's rulings as to attorney's fees and GAL fees. We affirm the family court's rulings, except for the delegation order and the award of attorney's fees to Mother, which we reverse.

## I.  FACTS

The parties divorced in 2011. Pursuant to their divorce decree, the parties agreed to joint custody of their two daughters, "J"[1] and "S." The parties have since engaged in sporadic litigation over custody and visitation. A 2013 order approved the parties' joint custody agreement with Mother having primary placement.

In 2017, Mother brought this action seeking full custody of J and S, suspension of Father's visitation, for Father to be psychologically evaluated, and attorney's fees. Mother claimed a substantial change in circumstances, based in part on J's allegations that Father had touched her inappropriately. Father answered and counterclaimed, denying the allegations and seeking dismissal or full custody. It is important to note there has never been any finding or evidence of abuse.

In a temporary order, the family court suspended Father's visitation until J and S underwent a forensic interview. The court also appointed Amie S. Carpenter, Esquire, as the GAL. A second temporary order decreed Father's visitation would resume once approved by the girls' counselor. The court also ordered the parties to participate in a parental alienation assessment conducted by Cindy Stichnoth.

The case was tried for four days in June 2019. At the outset, the GAL and Mother moved to quash Father's subpoena of J, arguing Rule 23, SCRFC, did not require J to testify, nor was it in J's best interest to testify with her parents present. The family court granted the motion to quash, ultimately ruling at the close of testimony that it would interview J in private and off the record with the GAL present.

During the trial, Mother called Stichnoth, an expert in parental alienation, and Margaret Lee, the girls' counselor. Father objected to Stichnoth and Lee testifying as to statements J and S made during their interviews as inadmissible hearsay, but the court ruled under Rule 803(4), SCRE, it would allow the counselors to discuss

---

[1] The custody and visitation issues as to J are moot because she is now over eighteen.

the girls' statements that were specifically made for the purpose of medical diagnosis or treatment. Father objected to Lee's written report as bolstering and hearsay, but the family court admitted the report. The GAL also testified. The family court overruled Father's hearsay objection to the GAL testifying as to the girls' statements.

The family court filed an order granting Mother sole custody of J and S and continuing the suspension of Father's visitation rights. The family court also ordered Father to undergo a psychological evaluation and complete any recommended treatment. It further stated Father's counselor and Lee "shall work together to determine the best course of action to reunify Father with" J and S and "Father shall have any visitation deemed appropriate by Margaret Lee and his counselor or therapist." It further ruled: "Six (6) months after the filing of this Order, Father may petition the court to request visitation if he has not been allowed any visitation or to request an increase in any visitation approved by the counselors." Finally, the family court ordered Father to pay Mother $12,500 in attorney's fees and one-half of the GAL's fees in the amount of $5,274.69.

## II.   STANDARD OF REVIEW

Generally, on appeal from the family court, we review factual and legal issues de novo. *Lewis v. Lewis*, 392 S.C. 381, 386, 709 S.E.2d 650, 652 (2011). But we are not required to ignore the fact that the family court saw and heard the witnesses and was in a better position to evaluate their credibility and assign comparative weight to their testimony. *Id*. at 385, 709 S.E.2d at 651–52. The appellant bears the burden of proving the family court findings are against the greater weight of the evidence. We review the family court's evidentiary and procedural rulings for abuse of discretion. *Stoney v. Stoney*, 422 S.C. 593, 594 n.2, 813 S.E.2d 486, 486 n.2 (2018).

## III.   DISCUSSION

1.  J's and S's Statements, Hearsay, and Calling J as a Witness

Over Father's objection, Stitchnoth, Lee, and the GAL testified about numerous statements J and S made to them concerning things Father said and did. Father contends these statements were hearsay, and he was denied due process because he could not cross-examine the girls concerning the statements and the court quashed his subpoena of J.

A. Hearsay

Stichnoth's and Lee's testimony about what the girls said was admissible based on the hearsay exception for statements made for the purpose of medical diagnosis and treatment found in Rule 803(4), SCRE. South Carolina common law long recognized that what a patient seeking treatment says to his doctor about his condition is admissible. *Grey v. Young*, 16 S.C.L. 38, 41 (Harp. 1823); *Gentry v. Watkins-Carolina Trucking Co.*, 249 S.C. 316, 323, 154 S.E.2d 112, 116–17 (1967). The exception extended to statements regarding mental health. *Thompson v. Aetna Life Ins. Co*, 177 S.C. 120, 180 S.E. 880, 883–84 (1935). However, the exception covered only those statements the doctor reasonably relied upon in forming his professional opinion. *State v. Brown*, 286 S.C. 445, 446–47, 334 S.E.2d 816, 816–17 (1985). When the South Carolina Rules of Evidence arrived in 1995, the exception emerged as Rule 803(4), SCRE, which authorizes the admissibility of:

> Statements made for purposes of medical diagnosis or treatment and describing medical history, or past or present symptoms, pain, or sensations, or the inception or general character of the cause or external source thereof insofar as reasonably pertinent to diagnosis or treatment; provided, however, that the admissibility of statements made after commencement of the litigation is left to the court's discretion.

To be admissible under Rule 803(4), the statement must be (1) made for the purpose of and be reasonably pertinent to medical diagnosis or treatment; (2) describe the patient's medical history, past or present symptoms, pain or sensations, or the inception or general character of their cause or external source; and (3) reasonably relied upon by the medical professional. *See State v. Simmons*, 423 S.C. 552, 564–65, 816 S.E.2d 566, 573 (2018) (holding physician's testimony inadmissible hearsay to the extent it recounted statements by the minor patient concerning the identity of his abuser that were not made for the purposes of medical treatment or reasonably pertinent to it); *State v. Burroughs*, 328 S.C. 489, 501, 492 S.E.2d 408, 414 (Ct. App. 1997) (nurse's testimony that rape victim told her defendant had asked if he could hug victim before he assaulted her was not admissible under Rule 803(4), as statement "in no way can be viewed as 'reasonably pertinent' to victim's diagnosis or treatment").

Statements made for purposes of medical diagnosis or treatment are exempt from the rule against hearsay because of their general inherent trustworthiness: no sensible person genuinely seeking a doctor's help would speak falsely about his perception of his condition. The reliability of such statements "is assured by the likelihood that

the patient believes that the effectiveness of the treatment depends on the accuracy of the information provided to the doctor, which may be termed a 'selfish treatment motivation.'"  2 *McCormick on Evidence* § 277 (8th ed. 2020) (footnotes omitted). The admissibility of patient statements under Rule 803(4) mirrors Rule 703's approval of an expert's use of hearsay in forming her opinions.  *See* Rule 703, SCRE (authorizing expert to base her opinion testimony on "facts or data" that may not be admissible as long as they are of a type reasonably relied upon by experts in forming opinions).

Whether Rule 803(4), SCRE, covers the admissibility of a statement made to a therapist or mental health professional (rather than a medical doctor) does not appear to have been addressed in South Carolina.  *Cf. Howle v. PYA/Monarch, Inc.*, 288 S.C. 586, 591, 594, 596, 344 S.E.2d 157, 159, 161–62 (Ct. App. 1986) (allowing psychologist expert witness to offer opinion testimony based in part on inadmissible hearsay as Rule 703, SCRE, now permits).  The text of the rule does not require that the statement even be made to a medical provider.  Indeed, the advisory committee notes to Federal Rule 803(4) explain that the statement "need not have been made to a physician.  Statements to hospital attendants, ambulance drivers, or even members of the family might be included."  Fed. R. Evid. 803(4) advisory committee's note to paragraph (4).  In the federal system, "every Court of Appeals to consider th[e] issue has determined that statements made to a mental health professional for the purposes of diagnosis or treatment qualify under the hearsay exception in Rule 803(4)." *United States v. Gonzalez*, 905 F.3d 165, 200 (3d Cir. 2018) (collecting cases); *United States v. Kappell*, 418 F.3d 550, 556 (6th Cir. 2005) (psychotherapist); *United States v. Newman*, 965 F.2d 206, 210 (7th Cir. 1992) (psychologist); *Morgan v. Foretich*, 846 F.2d 941, 949–50 (4th Cir. 1988) (psychologist).

Rule 803(4) is subject to overextension (almost anything a mental health patient says could be "reasonably pertinent" to the diagnosis), and the wise trial judge will, when appropriate, deploy his discretion "to admit the statements only as proof of the patient's condition and not as proof of the occurrence of the recited events." *Weinstein's Federal Evidence* § 803.06[7] at 803-48.3 (2d ed. 2021 update) (noting condition for which patient is seeking mental health treatment may have distorted his "perception, memory, or veracity"); 4 Christopher B. Mueller & Laird C. Kirkpatrick, *Federal Evidence* § 8.75 (4th ed. 2021) (urging "caution" in extending Rule 803(4) to statements of mental health patients); John J. Capowski, *An Interdisciplinary Analysis of Statements to Mental Health Professionals Under the Diagnosis or Treatment Hearsay Exception*, 33 Ga. L. Rev. 353, 392–93 (1999); *see also* Rule 105, SCRE.  That is what the family court did here.  We recognize the "selfish treatment motivation" may not hold up when the patient is a malingerer or

afflicted by a mental malady like Munchausen's syndrome, but that is why Rule 803(4) contains the "reasonably pertinent" requirement, and Rules 401 and 403, SCRE, may be used to exclude the irrelevant and unduly prejudicial. It is also why we have cross-examination. Accordingly, we affirm the family court's ruling that Stichnoth and Lee could testify regarding the statements the girls made to them that they used in diagnosing and treating the girls.

As to the GAL's testimony, Father did not object to admission of the GAL's report, and her testimony regarding J's and S's statements was cumulative to her report. *See State v. Jennings*, 394 S.C. 473, 478, 716 S.E.2d 91, 93–94 (2011) ("Improperly admitted hearsay which is merely cumulative to other evidence may be viewed as harmless."). Thus, we affirm the admission of the girls' statements during the GAL's testimony. *See State v. Fulton*, 333 S.C. 359, 363–64, 509 S.E.2d 819, 821 (Ct. App. 1998) (appellant must show error and prejudice to warrant reversal of an evidence ruling).

### B. Due Process Right to Cross-Examine J

The family court did not err in quashing J's subpoena and deciding to interview her off the record without the parties or their attorneys present. As noted by the family court, this was a custody case, not an intervention hearing to determine whether abuse or neglect occurred as in *South Carolina Department of Social Services v. Wilson (Wilson I)*, 342 S.C. 242, 536 S.E.2d 392 (Ct. App. 2000), *aff'd as modified*, 352 S.C. 445, 574 S.E.2d 730 (2002). *See S.C. Dep't of Soc. Servs. v. Wilson (Wilson II)*, 352 S.C. 445, 455, 574 S.E.2d 730, 735 (2002) ("Like criminal matters, an important liberty interest is also at issue in an intervention proceeding."); *id*. ("Accordingly, in an intervention proceeding, the child witness' testimony should be given in the presence of the parent/defendant."). Nevertheless, due process concerns are present in custody cases and confrontation rights have been recognized in civil cases. *See Wilson II*, 352 S.C. at 452–53, 574 S.E.2d at 733–34; *Wilson I*, 342 S.C. at 244, 536 S.E.2d at 393–94; *In re Vora*, 354 S.C. 590, 595, 582 S.E.2d 413, 416 (2003). We believe Rule 23, SCRFC—which grants the family court the discretion to allow a child to testify "as to the misconduct of either parent" if the testimony is essential to establish the material facts—adequately protected Father's due process rights under the circumstances here. *See* Rule 23(b), SCRFC ("Children should not be offered as witnesses as to the misconduct of either parent, except, when, in the discretion of the court, it is essential to establish the facts alleged.").

J's testimony was not essential to establish the facts. Father wanted to call J as a witness to ask her about the truth and context of several events and statements the

counselors and the GAL relied upon in forming their opinions and conclusions. But the counselors explained their diagnoses did not depend on whether Father actually did or said what his daughters claimed. What mattered was the girls' perceptions of and responses to the situations and environment. The counselors acknowledged these perceptions could be flawed, unrealistic, or mistaken. Because the truth of the events was not essential to the custody and visitation issue, the family court acted within its discretion in ruling Rule 23, SCRFC, did not require J's testimony. Finally, given J's response to being subpoenaed and her diagnosis of PTSD and anxiety, we find the family court properly determined it was not in J's best interest to testify in the presence of the parties or their attorneys. Rule 22, SCRFC, empowered the family court to interview J in private. *See* Rule 22, SCRFC ("In all matters relating to children, the family court judge shall have the right, within his discretion, to talk with the children, individually or together, in private conference."); *Dodge v. Dodge*, 332 S.C. 401, 418, 505 S.E.2d 344, 353 (Ct. App. 1998) ("[T]he decision whether to interview the children in private conference is a matter within the family court's discretion."). Thus, we affirm as to this issue as the trial proceedings minimized any risk that Father's rights would be wrongfully deprived and Father had a meaningful opportunity to be heard despite the lack of confrontation. *See Matthews v. Eldridge*, 424 U.S. 319, 334–35 (1976); *Wilson II*, 352 S.C. at 453, 574 S.E.2d at 734.

### 2. Admission of Lee's Written Report

Father argues the family court erred in admitting Lee's written report because it was hearsay. We disagree.

The portion of Lee's report detailing when Lee began treating J and S and what she was treating them for is admissible under Rule 7, SCRFC. *See* Rule 7, SCRFC (providing "[t]he written statement by a physician showing that a patient was treated at certain times and the type of ailment" is "admissible in evidence without requiring that the persons or institution issuing the documents or statements be present in court). The majority of the rest of the report detailed the girls' reports of their symptoms, which the family court properly admitted under Rule 803(4), SCRE, as statements made for medical treatment or diagnosis. Furthermore, Lee's trial testimony included much of what was in the report, including the girls' symptoms and Lee's diagnoses and recommendations. The statements in the report were cumulative to Lee's trial testimony, and any error was harmless.

### 3. Father's Visitation Rights

Father argues the family court essentially terminated his visitation rights even through Mother did not meet her burden of proving he was an unfit parent; there was no finding of abuse or neglect by Father; and Mother's evidence relied upon Stichnoth, Lee, and the GAL, none of whom had seen the girls interact with him. We disagree.

The family court specifically stated it suspended Father's visitation rights "without prejudice." The greater weight of the evidence showed circumstances, namely J's and S's mental health, had changed and it was in their best interest to not have visitation with Father. *See Woodall v. Woodall*, 322 S.C. 7, 12, 471 S.E.2d 154, 158 (1996) ("When awarding visitation, the controlling consideration is the welfare and best interest of the child."); *Latimer v. Farmer*, 360 S.C. 375, 381, 602 S.E.2d 32, 35 (2004) ("In order for a court to grant a change in [visitation], there must be a showing of changed circumstances occurring subsequent to the entry of the divorce decree."). Here, while the girls had experienced other traumas, such as the death of their younger half-sister, both Stichnoth and Lee believed the girls were struggling with PTSD and anxiety due to their relationship with Father. Stichnoth believed Father's behavior had estranged the girls from him. Lee testified both girls did not feel safe with Father and did not want to visit with Father. S claimed she would run away if forced to visit with Father. Lee further noted J's and S's mental health had improved, but S suffered setbacks when her PTSD was triggered by Father. Accordingly, both Stichnoth and Lee recommended Father's visitation not be reinstated until he completed counseling and gained adequate insight into and appreciation of the girls' perceptions of his parenting, regardless of whether their perceptions were consistent with reality. To be sure, Father's cross-examination of the counselors demonstrated some overreaching and dubious aspects of their testimony. Nevertheless, Stichnoth, Lee, the GAL, and Mother all agreed that, at the time of the trial, reunification with Father was not in the girls' best interest. *See Lewis v. Lewis*, 400 S.C. 354, 364–65, 734 S.E.2d 322, 327 (Ct. App. 2012) ("In determining the best interests of the child, the family court considers several factors 'including: who has been the primary caretaker; the conduct, attributes, and fitness of the parents; the opinions of third parties (including GAL, expert witnesses, and the children); and the age, health, and sex of the children.'" (quoting *McComb v. Conard*, 394 S.C. 416, 422, 715 S.E.2d 662, 665 (Ct. App. 2011))). Furthermore, there was evidence the girls, who were both teenagers at the time of trial, did not wish to have visitation with Father. *See id*; S.C. Code Ann. § 63-15-30 (2008) ("In determining the best interests of the child, the court must consider the child's reasonable preference for custody. The court shall place weight upon the preference based upon the child's age, experience, maturity, judgment, and ability to express a preference."). Accordingly, we find the family court did not err

in suspending Father's visitation. The situation here resembles that of *Nash v. Byrd*, 298 S.C. 530, 537, 381 S.E.2d 913, 917 (Ct. App. 1989), where we affirmed the suspension of visitation until the Father underwent counseling designed to repair his relationships with his child in the hope it could become harmonious. The record demonstrates that both Mother and Father share responsibility for the trauma caused to daughters by the parties' litigation.

### 4. Delegating Visitation to Counselors

The family court erred in ordering Father could only have visitation when and if his counselor and Lee deemed it appropriate. Deciding issues related to the best interests of children, including visitation, is the exclusive authority and responsibility of the family court, not third parties. *Singh v. Singh*, 434 S.C. 223, 232, 863 S.E.2d 330, 334 (2021) ("[T]he family court cannot delegate its authority to determine the best interests of the children . . . ."). Accordingly, we reverse as to this issue. *See Kosciusko v. Parham*, 428 S.C. 481, 502, 836 S.E.2d 362, 373 (Ct. App. 2019); *Hardy v. Gunter*, 353 S.C. 128, 138, 577 S.E.2d 231, 236 (Ct. App. 2003); *Stefan v. Stefan*, 320 S.C. 419, 422, 465 S.E.2d 734, 736 (Ct. App. 1995) ("While this court can appreciate the frustration of the family court in devising a visitation plan for the [parties], it was an error to delegate this responsibility to [third parties].").

### 5. Attorney's Fees and GAL Fees

Upon de novo review, we find the family court erred in ordering Husband to pay one-third of Wife's attorney's fees in the amount of $12,500. We acknowledge Mother obtained beneficial results at trial as she was granted sole custody of the girls and Father's visitation remained suspended as she requested, and we do not reverse these beneficial results on appeal. While this factor weighs in Mother's favor, it alone is not enough to warrant an award of attorney's fees to Mother. *See Chisholm v. Chisholm*, 396 S.C. 507, 510, 722 S.E.2d 222, 224 (2012) ("Beneficial result alone is not dispositive of whether a party is entitled to attorney's fees." (quoting *Upchurch v. Upchurch*, 367 S.C. 16, 28, 624 S.E.2d 643, 648 (2006))). Based on the financial declarations, Mother, a nurse pursuing her doctorate, makes $4,052 in gross monthly income, while Father, a self-employed property developer with a high school education, grosses only $1,300 per month. Additionally, Father is obligated to pay Mother $226 in monthly child support, leaving him $1,074 a month in gross income. While Mother has additional financial burdens as she has three children from her current marriage and pays $30 a month for health insurance for all of her children, she also has a husband who contributes to their household's income. Based on their

respective financial conditions, we find Mother is better able to pay her attorney's fees than Father.  Forcing Father to pay his own attorney's fees of $16,575 as well as $12,500 of Mother's would severely impact his financial condition.  *See E.D.M. v. T.A.M.*, 307 S.C. 471, 476–77, 415 S.E.2d 812, 816 (1992) ("In determining whether an attorney's fee should be awarded, the following factors should be considered: (1) the party's ability to pay his/her own fee attorney's fee; (2) beneficial results obtained by the attorney; (3) the parties' respective financial conditions; [and] (4) effect of the attorney's fee on each party's standard of living.").  Thus, we reverse the award of attorney's fees to Wife.

However, the family court did not err in ordering Father to pay half of the GAL fees in the amount of $5,274.69.  The GAL well performed her duties and is entitled to payment for her professional services.  *See Marquez v. Caudill*, 376 S.C. 229, 250, 656 S.E.2d 737, 747 (2008).

## IV.    CONCLUSION

We commend the family court for its patient and deliberate handling of this difficult case.  We affirm the family court's admission of the girls' statements as testified to by Stichnoth, Lee, and the GAL.  We also affirm the suspension of Father's visitation rights, the admission of Lee's written report into evidence, and the family court's decree that Father pay half of the GAL fees.  We reverse the family court insofar as it allowed Lee and Father's counselor to determine when and if Father could resume visitation with the girls and ordered Father to pay Mother $12,500 in attorney's fees.

**AFFIRMED IN PART AND REVERSED IN PART.**

**KONDUROS and HEWITT, JJ., concur.**